

**IT IS ORDERED as set forth below:**

**Date: October 31, 2023**

_____

**Sage M. Sigler**
**U.S. Bankruptcy Court Judge**
**Signed as Revised by the Court**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **In re:** | : | **CASE NUMBER:** |
| | : | |
| **KALOS CAPITAL, INC.,** | : | **22-58326-SMS** |
| | : | |
| Debtor. | : | Chapter 11 Subchapter V |
| _____ | : | |

**ORDER CONFIRMING DEBTOR'S SECOND AMENDED PLAN OF LIQUIDATION**

      A.     On October 17, 2022 (the "Petition Date"),[1] Debtor filed a voluntary petition for relief

under subchapter V of chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as

amended (the "Bankruptcy Code"), with the Clerk of this Court.

      B.     On October 17, 2022, Debtor filed *Debtor's Plan of Liquidation* [Docket No.

15].  On June 30, 2023, Debtor filed *Debtor's First Amended Plan of Liquidation* [Docket No. 86].

_____

[1] Unless otherwise defined, capitalized terms used in this order (the "Order") shall have the meanings ascribed to them
in the Plan.

On July 7, 2023, Debtor filed *Debtor's Second Amended Plan of Liquidation* [Docket No. 93] (the "Plan"). On August 11, 2023, Debtor filed the *Supplement to Debtor's Second Amended Plan of Liquidation* [Docket No. 109].

C.       On October 17, 2022, Todd Hennings was appointed as the Subchapter V Trustee for this case (the "Sub V Trustee"). [Docket No. 18].

D.       On October 21, 2022, Debtor caused the *Notice of Chapter 11 Bankruptcy Case* (the "Initial Notice") to be served on the list of former clients and customers of Debtor contained on the Certificate of Service filed at Docket No. 35.

E.       On July 13, 2023, the Court entered its *Order (A) Establishing Procedures For Solicitation And Tabulation Of Votes To Accept Or Reject The Plan Of Liquidation, (B) Approving The Forms Of Ballot And Solicitation Materials, (C) Establishing Voting Deadline, (D) Fixing The Date, Time, And Place For The Hearing On Confirmation Of The Plan And The Deadline For Filing Objections Thereto, and (E) Approving Related Notice Procedures* (the "Solicitation Procedures Order") [Docket No. 100].

F.       On July 19, 2023, Debtor served copies of the Plan, the *Notice of (I) Deadline to Object to Plan of Liquidation; (II) Deadline for Casting Votes to Accept or Reject Debtor's Plan of Liquidation, (III) the Hearing on Confirmation of the Plan; (IV) Releases Contained Within Plan; and (V) Certain Related Matters* (the "Confirmation Notice") and the *Ballot for Accepting or Rejecting Debtor's Chapter 11 Plan of Liquidation* (the "Ballots") as detailed in that certain *Certificate of Service* filed on July 21, 2023 [Docket No. 106].

G.       On August 22, 2023, Debtor filed its *Report of Balloting Pursuant to Bankruptcy Local Rule 3018-1* the ("Ballot Report") [Docket No. 112] certifying the results of the ballot tabulation for the classes of claims voting to accept or reject the Plan.

H.       On August 22, 2023, the Sub V Trustee filed his *Report of Subchapter V Trustee* (the

"Sub V Trustee Report") [Docket No. 113] in which the Sub V Trustee recommended confirmation of the Plan.

I.    On August 23, 2023, the United States Trustee filed *the United States Trustee's Objection to Confirmation of Debtor's Plan of Reorganization* (the "UST Objection") [Docket No. 114].

J.    On August 25, 20223, Debtor filed *Debtor's (I) Brief in Support of Confirmation of Debtor's Second Amended Plan of Liquidation; and (II) Response to the U.S. Trustee's Objection to Confirmation* (the "Confirmation Brief") [Docket No. 116] providing evidence and legal arguments why the Plan should be confirmed and addressing the UST Objection.

K.    Pursuant to section 1128(a) of the Bankruptcy Code, the Court held a hearing on August 29, 2023 (the "Confirmation Hearing") to consider confirmation of the Plan.

**NOW, THEREFORE**, based upon the Court's review of, among other things, the Plan, the Confirmation Notice, the Confirmation Brief, the Ballot Report, the Sub V Trustee Report, the UST Objection, all of the evidence proffered or adduced at, and the arguments of counsel made at, the Confirmation Hearing; and upon the record of the Confirmation Hearing and all prior proceedings in these Cases; and after due deliberation thereon; and good cause appearing therefor:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY FOUND AND DETERMINED that:

The findings and conclusions set forth in the Court's October 31, 2023 *Memorandum Opinion* [Docket No. 133] are incorporated by reference as if fully set forth herein and, together with the following findings and conclusions, constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

To the extent any findings of fact constitute conclusions of law, they are adopted as such. To the extent any conclusions of law constitute findings of fact, they are adopted as such.

1.     <u>Jurisdiction / Venue / Core Proceeding</u>

This Court has jurisdiction over this chapter 11 Bankruptcy Case pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2), and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

2.     <u>Judicial Notice</u>

This Court takes judicial notice of the docket of Debtor's chapter 11 Bankruptcy Case and all related adversary proceedings maintained by the Clerk of the Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and evidence and argument made, proffered or adduced at, the hearings held before the Court during the pendency of the Bankruptcy Case or any related adversary proceeding.

3.     <u>Outline of Plan</u>

In addition to Administrative Claims, which need not be designated, the Plan designates four Classes of Claims and/or Interests.  Under the Plan:

- Holders of Non-Tax Priority Claims (<u>Class 1</u>) are impaired and thus had the right to vote to accept or reject the Plan.

- Holders of General Unsecured Claims (<u>Class 2</u>) are impaired and thus had the right to vote to accept or reject the Plan.

- Holders of Settling Parties Claims (Class 3) are impaired and thus had the right to vote to accept or reject the Plan.

- Holders of Interests of Debtor (<u>Class 4</u>) are impaired and the Plan specifically granted Class 4 interest holders the right to vote to accept or reject the Plan.

4.     <u>Transmittal and Mailing of Materials; Notice</u>

The Plan, applicable ballots and related documents were transmitted and served upon all interested parties in substantial compliance with the Bankruptcy Rules, any applicable local rules,

and the Solicitation Procedures Order, and such transmittal and service were adequate and sufficient. The Confirmation Notice and all deadlines were given in compliance with the Bankruptcy Rules and were good and sufficient in accordance with FED. R. BANKR. P. 2002(b) and 3020(b)(2), and no other or further notice is required.

5.    Receipt and Tabulation of Votes

Votes for acceptance or rejection of the Plan were solicited in good faith and in compliance with Bankruptcy Code section 1126, Bankruptcy Rule 3018, and the Solicitation Procedures Order, all other applicable provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations.

Such transmittal and service were adequate and sufficient, and no further notice is or shall be required. All procedures used to distribute Plan solicitation materials to holders of Claims and Interests were fair, and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations. The tabulation of Ballots in the Ballot Report was proper and appropriate. As described in the Ballot Report, the Plan was accepted by all of the voting Claims Holders in Classes 1, 2 and 3 and all of the voting Interest Holders in Class 4.

6.    Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))

The Plan complies with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, thereby satisfying 11 U.S.C. § 1129(a)(1).

(a)    Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1), and 1129(a)(1))

In addition to Administrative Claims which need not be designated, the Plan designates four Classes of Claims and Interests. The Claims and/or Interests placed in each Class are substantially similar to other Claims or Interests, as the case may be, in each such Class, and such classification is therefore consistent with section 1122 of the Bankruptcy Code. Valid business, factual, and

legal reasons exist for the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between or among Holders of Claims or Interests. Specifically, valid business, factual, and legal reasons exist for the separate classification of Non-Tax Priority Claims in Class 1, General Unsecured Claims in Class 2, Settling Parties Claims in Class 3, and for the separate classification of Interests of Debtor in Class 4. The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(b)     Specification of Unimpaired Classes (11 U.S.C. §1123(a)(2))

The Plan specifies that there are no Classes of Claims that are not impaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(c)     Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))

The Plan specifies the treatment of impaired status of Claims in Classes 1, 2 and 3 as well as the status of the Interests of Debtor in Class 4 as of the Effective Date, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(d)     No Discrimination (11 U.S.C. § 1123(a)(4))

The Plan provides for the same treatment for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(e)     Implementation of the Plan (11 U.S.C. § 1123(a)(5))

The Plan provides adequate and proper means for implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code. Specifically, among other things, the Plan provides adequate means for the distribution of funds by the Sub V Trustee to Holders of Allowed Claims. The Plan also provides deadlines and procedures regarding the funding of the Plan

Contribution and Settlement Contribution.  Thus, the Plan complies with section 1123(a)(5) of the Bankruptcy Code.

(f)      Nonvoting Equity Securities (11 U.S.C. § 1123(a)(6))

The Plan does not provide for the issuance of equity securities. Therefore, the Plan complies with section 1123(a)(6) of the Bankruptcy Code.

(g)      Selection of Officers and Directors (11 U.S.C. § 1123(a)(7))

No new officers, directors, or trustees will be selected or provided under the Plan. Additionally, the provisions of the Plan regarding the performance of duties by the Sub V Trustee under the Plan are consistent with the interests of Creditors and Interest Holders and with public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

(h)      Not Applicable (11 U.S.C. § 1123(a)(8))

Pursuant to 11 U.S.C. §1191(a), 11 U.S.C. § 1123(a)(8) is not applicable to this Bankruptcy Case, as it was filed under Subchapter V of chapter 11 of the Bankruptcy Code.

(i)      Impairment Of Classes (11 U.S.C. § 1123(b)(1))

Pursuant to Article IV of the Plan, there are no unimpaired Classes under the Plan, and Classes 1, 2, 3 and 4 are Impaired Classes under the Plan.  As such, holders of claims in Classes 1, 2, 3 and 4 are authorized to vote to reject or accept the Plan.

(j)      Executory Contracts/Unexpired Leases (11 U.S.C. § 1123(b)(2))

In accordance with section 1123(b)(2) of the Bankruptcy Code, Article VII of the Plan provides that all Executory Contracts to which Debtor is a party will be rejected on the Effective Date of the Plan, except for Executory Contracts that were previously terminated, or that have been assumed or rejected pursuant to any orders of the Bankruptcy Court.  The Plan also provides that all Executory Contracts will be assumed that are provided for in any schedule of assumed contracts that may be included in any Plan Supplement.

(k)     Retention, Enforcement, and Settlement of Claims Held by Debtor
(11 U.S.C. § 1123(b)(3))

Pursuant to section 1123(b)(3) of the Bankruptcy Code, Section 6.4 of the Plan provides

that, "[u]nless released by this Plan, Debtor shall retain the ability to pursue any Claims of the Estate

and any Avoidance Actions."

(l)     Sale and Distribution of Assets (11 U.S.C. § 1123(b)(4))

Article VI of the Plan describes the means for execution and implementation of the Plan,

including the Sub V Trustee making distributions.

(m)     No Modification of Secured Claim Holders (11 U.S.C. § 1123(b)(5))

Article III of the Plan provides the only claims in the Bankruptcy Case are Non-Tax Priority

Claims (Class 1), Class 2 (General Unsecured Claims), Class 3 (Settling Parties Claims) and Interest

of Debtor Claims (Class 4).  There are no secured claims that are being addressed or modified in the

Plan.

(n)     Other Provisions Not Inconsistent with Title 11 (11 U.S.C. §
1123(b)(6))

In accordance with section 1123(b)(6) of the Bankruptcy Code, the Plan includes additional

appropriate provisions such as those related to the implementation of the Plan and provisions for

making distributions pursuant to the Plan that are not inconsistent with the applicable provisions of

the Bankruptcy Code.

7.     Identification of Plan Proponent (FED. R. BANKR. P. 3016(a))

As required by FED. R. BANKR. P. 3016(a), the Plan is dated and identifies the Plan

Proponent as Debtor.

8.      Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))

Debtor has complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code.  Specifically:

(a)      Debtor is a proper proponent of the Plan pursuant to section 1189(a) of the Bankruptcy Code.

(b)      Debtor complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Procedures Order in transmitting the Solicitation Packages and related documents and notices, and in soliciting and tabulating votes on the Plan.

(c)      Debtor, as well as its professionals, as applicable, have acted in compliance with all applicable provisions of the Bankruptcy Code and in "good faith," within the meaning of section 1125(e) of the Bankruptcy Code.

(d)      Debtor has acted in accordance with all orders of the Court entered during these chapter 11 Cases.

9.      Plan Proposed in Good Faith (11 U.S.C. 1129(a)(3))

Debtor has proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  The Court has examined the totality of the circumstances surrounding the formulation of the Plan.  Based on the evidence proffered or adduced at, or prior to, the Confirmation Hearing, the Court finds and concludes that the Plan has been proposed with the legitimate and honest purpose of maximizing the value of distributions of Debtor's Assets to the Holders of Allowed Claims.  Additionally, the Sub V Trustee Report and the support of Creditors entitled to vote for the Plan provides independent evidence of the Plan Proponent's good faith in proposing the Plan.  In light of the totality of the circumstances surrounding the Plan, and the entire record of this Bankruptcy Case, including any related

adversary proceedings, relating to the process leading to the Plan's formation, the Plan Proponent has proposed the Plan in good faith.

          10.      <u>Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>

The procedures set forth in the Plan for the Bankruptcy Court's review and ultimate determination of the fees and expenses to be paid by the Estate in connection with the Bankruptcy Case, or in connection with the Plan and incident to the Chapter 11 Case, satisfy the objectives of and are in compliance with Bankruptcy Code section 1129(a)(4).

          11.      <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>

Debtor has complied with the requirements of Bankruptcy Code section 1129(a)(5) because Debtor has disclosed the role and duties of the Sub V Trustee under the Plan. Moreover, Debtor has disclosed Carol Wildermuth's continued role with Debtor and the lack of compensation to any insiders. Accordingly, the Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

          12.      <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>

Section 1129(a)(6) of the Bankruptcy Code is inapplicable because Debtor has no rates that are subject to approval of any governmental regulatory commission.

          13.      <u>Best Interests of Creditors Test (11 U.S.C. § 1129(a)(7))</u>

The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. Specifically:

          (a)      The Liquidation Analysis annexed to the Plan, coupled with additional evidence related thereto that was proffered or adduced at, or prior to, the Confirmation Hearing has not been controverted by other evidence. The methodology used and assumptions made in the Liquidation Analysis, as supplemented by the evidence proffered or adduced at, or prior to, the Confirmation Hearing are reasonable.

(b)     Each Holder of a Claim or Interest in each Impaired Class either has accepted the Plan or will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if Debtor was liquidated under chapter 7 of the Bankruptcy Code on such date.

14.     Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))

Classes 1, 2, 3 and 4 all voted to accept the Plan.  Accordingly, the requirements of § 1129(a)(8) are met.

15.     Treatment of Administrative and Priority Claims (11 U.S.C. § 1129(a)(9))

The treatment of Administrative Claims and Priority Claims under Article II of the Plan satisfies the requirements of section 1129(a)(9).  The Plan provides that each allowed administrative claim is to be paid in full in cash on the effective date of the Plan, or when the Claim is later allowed, unless the holder of the Claim agrees otherwise. Moreover, the treatment of priority claims meets the requirements of 1129(a)(9). Accordingly, the Plan satisfied the requirements of section 1129(a)(9) of the Bankruptcy Code.

16.     Acceptance by at Least One Impaired Class (11 U.S.C. § 1129(a)(10))

As set forth in the Ballot Tabulation and as reflected in the record of the Confirmation Hearing, at least one Class of Claims and/or Interests that is impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any Insider of Debtor holding a Claim and/or Interest in such Class, thereby satisfying section 1129(a)(10) of the Bankruptcy Code.

17.     Feasibility (11 U.S.C. § 1129(a)(11))

Based upon the evidence proffered or adduced at or prior to the Confirmation Hearing, confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of Debtor except as provided in the Plan, thereby satisfying section 1129(a)(11) of the Bankruptcy Code.  There is a schedule of payments to be made in the Plan for the Plan Contribution and the Settlement Contribution and procedures related to the payment of those amounts.  Moreover, there are sufficient funds available to pay any known administrative expense claims.

18.     Payment of Fees (11 U.S.C. § 1129(a)(12))

All fees payable under 28 U.S.C. § 1930 have been paid or will be paid as Administrative Claims on or prior to the Effective Date of the Plan, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

19.     Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))

Debtor has no continuing retiree benefit plans.  Accordingly, the Plan satisfies section 1129(a)(13) of the Bankruptcy Code.

20.     Domestic Support Obligations (11 U.S.C. § 1129(a)(14))

Debtor has no outstanding domestic support obligations.  Accordingly, the Plan satisfies section 1129(a)(14) of the Bankruptcy Code.

21.     Amounts Distributed Under Plan Exceed Income of Debtor Over a Five-Year Period (1129(a)(15))

Pursuant to 11 U.S.C. § 1181(a), 11 U.S.C. § 1129(a)(15) is not applicable to subchapter V bankruptcy cases.

22.    <u>Transfers by Nonprofit Organizations (11 U.S.C. § 1129(a)(16))</u>

Debtor is not a nonprofit organization.  Accordingly, the Plan satisfies the requirements of 11 U.S.C. § 1129(a)(16) of the Bankruptcy Code.

23.    <u>Principal Purpose of Plan (11 U.S.C. § 1129(d))</u>

The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933 (15 U.S.C. § 77e), and no Governmental Unit has filed any objection asserting such avoidance.

24.    <u>Subchapter V Plan Contents (11 U.S.C. § 1190)</u>

The Plan meets the requirements of 11 U.S.C. § 1190 as it includes a brief history of Debtor, a liquidation analysis, projections of distributions to Holders of Allowed Claims, and any assets of Debtor shall be distributed in accordance with the Plan.

25.    <u>Executory Contracts and Unexpired Leases</u>

The rejection of any executory contracts and unexpired leases that have not been assumed and assigned is in the best interests of Debtor's Estate and is hereby approved.

26.    <u>Transfers of Property</u>

To the extent it constitutes a transfer, the re-vesting, on the Effective Date, the distribution of property to holders of Allowed Claims by the Sub V Trustee (a) is a legal, valid, and effective transfer of property, (b) with good title to such property free and clear of all Claims and Interests, except as expressly provided in the Plan or this Order, (c) does not constitute an avoidable transfer under the Bankruptcy Code or under applicable non-bankruptcy law, and (d) does not and shall not subject Debtor or the Sub V Trustee to any liability by reason of such transfer under the Bankruptcy Code or under applicable non-bankruptcy law.  The transfers of property to Holders of Claims and Interests under the Plan are for good consideration and value.

27.     Satisfaction of Confirmation Requirements

Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

28.     Conditions to Confirmation

Any condition to Confirmation has been satisfied, or will be satisfied, on or before the Effective Date.

29.     Retention of Jurisdiction

The Court will retain jurisdiction over the matters set forth in Article XI or as otherwise set forth in the Plan.

30.     Retention of Claims.

Unless released by this Plan, Debtor retains all Claims and Causes of Action it has, including, but not limited to, any Claims, Causes of Action or Avoidance Actions against any persons or entities listed in Debtor's Schedules of Assets and Liabilities, Statement of Financial Affairs, and Monthly Operating Reports, and any Claim or Cause of Action against RBC including, but not limited to, for turnover of property.

31.     Waiver of FED. R. BANKR. P. 3020(e)

The stay contemplated by FED. R. BANKR. P. 3020(e) shall not apply to this Order.

32.     Modifications of the Plan

Any modifications to the Plan as set forth herein consist of technical or other changes that do not materially or adversely affect or change the treatment of any Claims or Interest and shall be considered part of the Plan.  Accordingly, pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code.

33.    Releases

The Court's basis for approving the releases contained in section 12.12 of the Plan, as modified in ¶ 45 below, is set forth in its *Memorandum Opinion* entered simultaneously with, and incorporated into, this Order.

## DECREES

NOW, THEREFORE, IT IS HEREBY **ORDERED**, **ADJUDGED**, AND **DECREED** THAT,

34.    Confirmation

The Plan, a copy of which is annexed hereto as **Exhibit A,** is hereby **CONFIRMED** under section 1191(a) of the Bankruptcy Code, and all parties-in-interest are authorized and empowered, or enjoined, as the case may be, to act in accordance with its terms.  All acceptances previously cast for the Plan are hereby deemed to constitute acceptances of the Plan as modified hereby.  The terms of the Plan and the exhibits thereto are incorporated by reference into and are an integral part of the Plan and this Order.

35.    Objections

All formal or informal objections to Confirmation of the Plan that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits.  To the extent, if any, that pleadings or letters filed by individuals or entities constitute objections to Confirmation of the Plan and have not been withdrawn, waived, or settled, they are overruled on the merits.  Specifically, the UST's Objection is overruled.

36.    Provisions of Plan and Confirmation Order Nonseverable and Mutually Dependent

The provisions of the Plan and this Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

37.    Good Faith Solicitation

Debtor and each of its respective advisors, accountants, business consultants, attorneys, representatives, financial advisors, or agents, as well as their successors and assigns, through their participation in the negotiation and preparation of the Plan and their efforts to confirm the Plan, have solicited acceptances and rejections of the Plan in good faith and participated in this Bankruptcy Case in compliance with the applicable provisions of the Bankruptcy Code and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section 12.11 of the Plan.

38.    Plan Classification Controlling

The classification of Claims and Interests for purposes of the distributions to be made pursuant to the Plan is governed solely by the terms of the Plan. The classifications set forth on the Ballots tendered to or returned by Holders of Claims or Interests of Debtor in connection with voting on the Plan (a) were set forth thereon solely for purposes of voting on the acceptance or rejection of the Plan and tabulation of such votes, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Interests under the terms of the Plan for distribution purposes, and (c) may not be relied upon by any Holder of a Claim or Interest as actually representing the actual classification of such Claims and Interests under the terms of the Plan for distribution purposes.

39.    Executory Contracts

Any counterparty to an executory contract or unexpired lease deemed rejected by the Plan shall file a Proof of Claim for rejection damages by the Rejection Bar Date or shall be forever barred from seeking a Claim for such damages against Debtor's Estate.

40.    Releases

Except as modified in this Order at ¶ 45, the releases, exculpation, and injunction provisions

contained in the Plan, including but not limited to those set forth in Section 12.11, 12.12 and 12.13, are hereby authorized, approved and binding on all persons and entities subject to those releases and who may have standing to assert such Claims or Causes of Action and who granted or were deemed to grant the releases under the Plan.

               41.    <u>Injunctions</u>

The injunctions contained in the Plan are hereby authorized, approved and binding on all persons and entities subject to those injunctions.

               42.    <u>Discharge</u>

As this Plan is confirmed pursuant to 11 U.S.C. § 1191(a), Debtor shall receive a discharge pursuant to 11 U.S.C. 1141(d). Pursuant to § 9.4(a) of the Plan, in addition thereto, the Distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, and release of all Claims and Causes of Action against Debtor, whether known or unknown, including any and all liabilities of Debtor, Liens on Debtor's assets, obligations of Debtor, rights against Debtor, and Interests in Debtor or its Estate that arose prior to the Effective Date, regardless of whether a claimant accepted or rejected the Plan.

               43.    <u>Binding Effect</u>

To the fullest extent possible pursuant to sections 524 and 1141 of the Bankruptcy Code, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, and except as expressly provided in the Plan, the provisions of the Plan (including the exhibits to, and all documents and agreements executed pursuant to, the Plan) and the Confirmation Order shall be binding on (i) Debtor, (ii) all Holders of Claims against and Interests in Debtor, whether or not impaired under the Plan and whether or not, if impaired, such Holders accepted, rejected, or are deemed to have accepted or rejected the Plan, (iii) each Person acquiring property under the Plan, (iv) all non-debtor parties to executory contracts and unexpired leases with Debtor, (v) all entities

that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan or herein (or prior orders of this Court) and (vi) each of the foregoing's respective heirs, successors, assigns, trustees, executors, administrators, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or guardians, if any (the Persons and entities described in clauses (i) through (vi), collectively, the "Bound Parties").

44.    Stays

Unless otherwise provided in the Plan or in this Order, all injunctions or stays in effect in Debtor's Bankruptcy Case under sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date. From and after the Effective Date, all injunctions or stays contained in the Plan or this Order shall remain in full force and effect in accordance with their terms.

45.    Plan Modifications

(A)    At the request of Debtor or based upon the Court's findings at the hearing on confirmation of the Plan, the Plan is hereby modified pursuant to 11 U.S.C. § 1193(a) as follows:

(1)    The definition in Article I of the Plan is modified to be as follows:

"Releasing Parties" means Debtor, the Estate, any bankruptcy trustee or other representative of Debtor, any holder of a Claim or Interest against Debtor, regardless as to whether that holder of a Claim or Interest against Debtor has asserted such a Claim or Interest in the Bankruptcy Case or otherwise. However, "Releasing Parties" shall not include any taxing authorities, JAMS, Inc., MSRB, Peach Tree Hotel Group, LLC, RegEd, or Taylor Communication.

(B)    Additional Modifications

Following entry of this Order, Debtor shall be authorized, upon notice, a hearing, and a subsequent order of the Bankruptcy Court, to alter, amend, or modify the Plan prior to substantial consummation in accordance with section 1193 of the Bankruptcy Code, or to remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry

out the purpose and intent of the Plan.

46.    General Authorizations

Pursuant to section 1142(b) of the Bankruptcy Code and the terms of the Plan, Debtor is authorized—without the need for further Court approval—to execute and deliver, and take such action as is necessary to effectuate the terms of, implement, or further evidence the contracts, and other agreements and documents contemplated by the Plan and the terms and conditions of the Plan, including, without limitation, to issuing, executing, delivering, filing, and recording any documents, Court papers, or pleadings, and to take any and all actions as may be necessary or desirable to implement, effect, or consummate the transactions contemplated by the Plan, whether or not specifically referred to in the Plan or related documents and without further application to or order of the Court.

47.    Documents

All documents necessary to implement the Plan shall, upon execution, be valid, binding and enforceable agreements and are not in conflict with any federal or state law.

48.    Exemption from Stamp Taxes

(a)    Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security, or the making, delivery, filing, or recording of any instrument of transfer under the Plan, shall not be taxed under any law imposing a recording tax, stamp tax, transfer tax, or similar tax.

(b)    All filing or recording officers, wherever located and by whomever appointed, are hereby directed to accept for filing or recording, and to file or record immediately upon presentation thereof, all instruments of absolute or collateral transfer without payment of any recording tax, stamp tax, transfer tax, or similar tax or governmental assessment (other than standard filing fees) imposed by federal, state, or local law.  Notice of entry of this Order in the form approved

by the Court (i) shall have the effect of an order of the Court, (ii) shall constitute sufficient notice of the entry of this Order to such filing and recording officers, and (iii) shall be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law. The Court specifically retains jurisdiction to enforce the foregoing direction, by contempt or otherwise.

49.    Payment of Administrative Claims

Pursuant to Section 2.1 of the Plan, each Holder of an Allowed Administrative Claim shall receive Cash equal to the unpaid portion of such Allowed Administrative Claim on the Effective Date or on the date that the Administrative Claim becomes an Allowed Administrative Claim; *provided, however*, that obligations incurred in the ordinary course of business during the Bankruptcy Case may be paid by Debtor in the ordinary course of business during the Bankruptcy Case in accordance with the terms and conditions of any agreement relating thereto.

50.    Deadline for Requests for Payment of Fee Claims

All final requests for compensation or reimbursement of Fee Claims for services rendered to Debtor pursuant to sections 330 and 503(b) of the Bankruptcy Code prior to the Effective Date (including requests under section 503(b)(4) of the Bankruptcy Code by any Professional or other entity for making a substantial contribution in the chapter 11 Case) shall be properly filed and served on the Master Service List, no later than 15 business days after the Confirmation Date as specified in Section 2.1 of the Plan unless otherwise extended by the Court.

51.    Payment of Bankruptcy Administrator Fees

All fees payable by Debtor under 28 U.S.C. § 1930 shall be paid on or before the Effective Date.

52.     <u>Non-Occurrence of Effective Date</u>

If the Plan does not become effective, then Debtor reserves all rights to: (a) seek an order from this Court directing that this Order be vacated, and/or (b) any settlement of Claims provided for in the Plan be null and void.

53.     <u>Retention of Jurisdiction</u>

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Order or the occurrence of the Effective Date, this Court shall retain exclusive jurisdiction over all matters arising out of, and related to, this Bankruptcy Case and the Plan as set forth in the Plan including Article XI.

54.     <u>References to Plan</u>

Any document related to the Plan that refers to a plan other than the Plan confirmed by this Order shall be, and it hereby is, deemed to be modified such that the reference to a plan in such document shall mean the Plan confirmed by this Order, if appropriate.

55.     <u>References to Plan Provisions</u>

The failure specifically to include or reference any particular provision of the Plan in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed in its entirety.

56.     <u>Authorization for Effectiveness of the Plan</u>

Debtor is authorized to consummate the Plan at any time after entry of this Order subject to the satisfaction or Debtor's waiver, which may occur in its sole discretion, of the conditions precedent to the Effective Date set forth in Section 9.7 of the Plan.

57.     <u>Notice of Entry of Confirmation Order and Effective Date</u>

In accordance with FED. R. BANKR. P. 2002 and 3020(c), within five (5) Business Days of the Effective Date of the Plan, Debtor (or its agent) shall give notice of the entry of this Order and

of the Effective Date of the Plan (the "Notice of Confirmation and Effective Date"), by United States

first class mail postage prepaid, by hand, or by overnight courier service to the Master Service List

(as defined in Docket No. 29).

    58.    Sufficiency of Notice of Confirmation and Effective Date

    Mailing of the Notice of Confirmation and Effective Date in the time and manner set forth in

the preceding paragraph is good and sufficient under the particular circumstances and in accordance

with the requirements of FED. R. BANKR. P. 2002 and 3020(c), and no further notice is necessary.

**END OF DOCUMENT**

Order prepared by:

*/s/ Kelly E. Waits*
Marc Solomon, Esq.
Georgia Bar No. 66630
Kelly E. Waits, Esq.
Georgia Bar No. 142677
BURR & FORMAN LLP
Suite 1100, 171 17th Street NW
Atlanta, Georgia 30363
Phone: (404) 815-3000
Facsimile: (404) 817-3244
Email: msolomon@burr.com
kwaits@burr.com

*Counsel for Debtor and Debtor-in-Possession*

EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | ) |
| | ) |
| | )    **Chapter 11** |
| | ) |
| **KALOS CAPITAL, INC.,** | )    **Case No. 22-58326-SMS** |
| | ) |
| | ) |
| | ) |
| Debtor. | ) |

---

**DEBTOR'S SECOND AMENDED PLAN OF LIQUIDATION**[1]

---

**BURR & FORMAN LLP**

/s/ Marc Solomon
Marc Solomon
Georgia Bar No. 66630
msolomon@burr.com
Kelly Waits
Georgia Bar No. 142677
kwaits@burr.com
171 17th Street, NW
Suite 1100
Atlanta, GA 30363
Telephone: (404) 815-3000
Facsimile: (404) 817-3244

*Counsel for Debtor and Debtor-in-Possession*

Dated: July 7, 2023

---

[1] The only change from *Debtor's First Amended Plan of Liquidation*, filed June 30, 2023 (Dkt. No. 86), is that the language in Sections 12.11 and 12.13 herein has been bolded and capitalized.

51135412 v1

# TABLE OF CONTENTS

**Page**

SUMMARY OF PLAN ......................................................................................................... 5

ARTICLE I : DEFINITIONS, CONSTRUCTION, AND INTERPRETATION ...................................... 7

ARTICLE II : UNCLASSIFIED CLAIMS .......................................................................... 13

2.1    Administrative Claims .................................................................................... 13

2.2    Priority Tax Claims ........................................................................................ 14

ARTICLE III : CLASSIFICATION OF CLAIMS ................................................................... 15

3.1    Introduction. ................................................................................................... 15

3.2    Claims Against the Debtor ............................................................................. 15

ARTICLE IV : IDENTIFICATION OF UNIMPAIRED AND IMPAIRED CLAIMS ..................... 15

4.1    Unimpaired Classes ........................................................................................ 15

4.2    Impaired  Classes ........................................................................................... 15

4.3    Controversy  Concerning  Impairment ........................................................... 16

ARTICLE V : TREATMENT OF CLAIMS ........................................................................... 16

5.1    Non-Tax Priority Claims – Class 1 ................................................................ 16

5.2    General Unsecured Claims – Class 2 ............................................................. 16

5.3    Settling Parties Claims – Class 3 ................................................................... 17

5.4    Interests of Debtor – Class 4 .......................................................................... 17

ARTICLE VI : MEANS FOR EXECUTION AND IMPLEMENTATION OF THIS PLAN ........... 17

6.1    Means for Execution and Implementation of this Plan ................................... 17

6.2    Plan Contribution and Settlement Contribution ............................................. 18

6.3    Distributions ................................................................................................... 20

6.4    Debtor's Handling of Claims and Avoidance Actions .................................... 20

ARTICLE VII : TREATMENT OF EXECUTORY CONTRACTS ............................................ 20

7.1    General Treatment of Executory Contracts: Rejected .................................... 20

7.2    Cure Payments and Release of Liability ......................................................... 20

7.3    Bar  to  Rejection  Claims ............................................................................... 21

7.4    Rejection  Claims ........................................................................................... 21

ARTICLE VIII : ACCEPTANCE OR REJECTION OF THE PLAN ......................................... 21

8.1    Impaired Classes Entitled to Vote ................................................................. 21

8.2    Alternative Confirmation Standards Under Section 1191(a) and (b) ............. 21

ARTICLE IX : EFFECT OF PLAN CONFIRMATION AND EFFECTIVE DATE ...................... 22

| 9.1 | Binding Effect | 22 |
| 9.2 | Vesting of Assets | 22 |
| 9.3 | Causes of Action and Claim Objections | 22 |
| 9.4 | Discharge of Debtor | 23 |
| 9.5 | Effectuating Documents; Further Transactions; Timing | 23 |
| 9.6 | Post-Confirmation Retention and Payment of Professionals | 23 |
| 9.7 | Conditions Precedent to the Effective Date | 24 |
| **ARTICLE X : OBJECTIONS TO CLAIMS; DISTRIBUTIONS** | | 24 |
| 10.1 | Objections to Claims | 24 |
| 10.2 | Settlement of Objections to Claims | 24 |
| 10.3 | No Interest on Claims | 24 |
| 10.4 | Setoffs by the Debtor; No Waiver | 25 |
| 10.5 | Procedures for Treating and Resolving Disputed and Contingent Claims | 25 |
| 10.6 | Distributions Under the Plan | 26 |
| 10.7 | Duty to Disgorge Overpayments | 27 |
| **ARTICLE XI : RETENTION OF JURISDICTION** | | 27 |
| 11.1 | Jurisdiction | 27 |
| 11.2 | Examination of Claims | 27 |
| 11.3 | Determination of Disputes | 27 |
| 11.4 | Additional Purposes | 28 |
| 11.5 | Failure of the Bankruptcy Court to Exercise Jurisdiction | 30 |
| **ARTICLE XII : MISCELLANEOUS PROVISIONS** | | 30 |
| 12.1 | General Notices | 30 |
| 12.2 | Plan Supplement | 31 |
| 12.3 | Exemption From Transfer Taxes | 31 |
| 12.4 | Revocation or Withdrawal of the Plan | 31 |
| 12.5 | Amendment and Modification of the Plan | 31 |
| 12.6 | Computation of Time | 32 |
| 12.7 | Due Authorization | 32 |
| 12.8 | Implementation | 32 |
| 12.9 | Execution of Documents | 32 |
| 12.10 | Bankruptcy Restrictions | 32 |
| 12.11 | Plan Exculpation | 32 |
| 12.12 | Plan Release | 33 |
| 12.13 | Plan Injunction | 34 |

**12.14**   **Document Retention and Maintenance**.................................................................................... 34

**12.15**   **Ratification**.................................................................................................................... 35

**12.16**   **Interpretation**.................................................................................................................. 35

**12.17**   **Severability of Plan Provisions** ...................................................................................... 35

**12.18**   **Governing Law**................................................................................................................. 35

**12.19**   **Compliance with Tax Requirements**............................................................................... 36

## INTRODUCTION

Kalos Capital, Inc. (the "Debtor" or "Kalos") proposes this Plan pursuant to Bankruptcy Code Section 1121(a).

**THE DEBTOR URGES ALL HOLDERS OF CLAIMS TO READ THIS PLAN IN ITS ENTIRETY.**

The Distributions to be made pursuant to this Plan to Holders of Allowed Claims are set forth in Article V of this Plan, in each of the Classes of Claims against the Debtor set forth in Article III of this Plan.

## SUMMARY OF PLAN[2]

This Plan is filed under Subchapter V of Chapter 11 of the Bankruptcy Code.

The Plan provides for the liquidation of the Debtor's Estate and the orderly payment of Allowed Claims. Additionally, the Plan provides for the Contribution by certain individuals to the Debtor's Estate to pay Allowed Claims and a release of individuals related to the Debtor from any Claims against those individuals that are in any way related to the Debtor.

This Plan incorporates a settlement reached between the Debtor and certain of the Debtor's creditors following a mediation.

## BRIEF HISTORY OF THE DEBTOR'S BUSINESS OPERATIONS AND REASONS FOR FILING BANKRUPTCY

Kalos is a Georgia corporation that was formed in 1997. Kalos was approved as a FINRA broker dealer in February 1998 with a limited scope of selling private placement securities. In December 2001, Kalos was approved as a retail broker dealer and opened an office in April 2002.

Kalos grew moderately from 2005 to 2009. After the economic recession and market pull back of 2008 and 2009, many financial advisors and investors started looking for more diverse portfolio solutions other than the standard stock/bond models. Kalos provided a solution with the "Endowment Style of Investing".

From 2010 to 2016, the firm grew an average of 46% annually. The firm's top revenue was in 2016 at nearly $28.5 million with over 60 branch offices and 100 registered producers. The firm's revenue declined by 7% a year in 2018 and 2019. In 2022, Kalos's annualized revenue is projected at $14.9 million.

---

[2] This "Summary of the Plan" is a short summary of some terms of the Plan. The Plan should be read in full. If there is any dispute between the "Summary of the Plan" and the remainder of the Plan, the remainder of the Plan will control.

51135412 v1

Kalos is located at 11525 Park Woods Circle, Alpharetta, GA 30005. Kalos is licensed to conduct business in 50 states. The independent branch offices of 1099 contractors and registered representatives were located throughout the country, but mainly in the eastern and central time zones.

As stated herein, Kalos was formed as a broker dealer. The model of the retail broker dealer is that a FINRA licensed registered representative must be licensed under the broker dealer and registered as branch offices. The broker dealer is then responsible for all supervisory oversight including the following:

- Reviewing and approving all new client account application, money movements, and all other account activity.
- Reviewing and approving all trades to ensure the investment meets suitability requirement by reviewing information provided by client such as net worth, income, investment objectives, risk tolerance, time horizon, investment product knowledge and other information.
- Conducting extensive due diligence on all non-listed securities such as private placements, Reg Ds and other types of private securities. The due diligence includes obtaining a 3rd party due diligence report, obtaining and reviewing sponsor audited financials along with thousands of pages of management provided documents, site visits, etc. If an offering is approved, the registered representative can then sell it to a client if the client meets suitability requirement of the specific offering. It is the broker dealer's responsibility to review each trade prior to transmission. A registered representative cannot sell a product that is not approved by the broker dealer.
- Reviewing and archiving all emails of registered representative and his/her office staff.
- Reviewing and approving/declining all correspondence of registered representative.
- Reviewing and approving/declining all advertising of registered representatives.
- Providing compliance and other training to registered representatives on a yearly basis
- Complying with Anti-Money Laundering regulation and other regulatory requirements.
- Reviewing and approving/declining an "Outside Business Activity" of any registered person. An Outside Business Activity could be investment related such as selling insurance or non-investment related such as owning a rental property or coaching a little league sports team.
- Monitoring and Reviewing every personal securities accounts and trades.

For the first 18 years, Kalos was profitable and had very few complaints or arbitrations.

Kalos offered non-public investments known as GPB Capital Holdings, LLC ("GPB") from August 2014 to May 2018.

GPB was formed March 19, 2013 to serve as the general partner of GPB Holdings, LP ("Holdings"), a private equity fund that was focused on acquiring controlling interests in early-stage and middle-market, income-producing private companies engaged in the automotive retail, information technology, and healthcare industries. In June 2018, GPB was unable to complete its

6

financial audits and failed to file timely registration statement with the SEC. In February 2021, the SEC appointed an independent monitor of GPB Holdings. In May 2022, GPB began filing audited financials.

In the second half of 2019, Kalos began receiving GPB arbitration demands. In 2020, Kalos's revenue declined sharply due to the COVID shutdown. At the same time, the expense of attorneys' fees and settlements related to GPB increased exponentially creating a perfect storm that ultimately led to Kalos' demise.

By mid-summer 2020, Kalos determined that due to the increasing legal expense, Kalos could not survive by continuing to litigate, negotiate settlements and mediate claims.

Kalos made the decision with advice of counsel to try to conduct a "global mediation" wrapping up all the outstanding GPB cases into one mediation.

The mediation began on December 17, 2020 and concluded with a settlement in late January 2021. However, since this time, attorneys filed more arbitrations against Kalos. To date, the legal fees related to the arbitrations, tolling agreements, and complaints against Kalos have exceeded $9,189,461.

On October 4, 2022, Kalos filed its Form BDW (Uniform Request for Broker-Dealer Withdrawal) to withdraw its registration from FINRA and the Security and Exchange Commission. Kalos no longer has any customer accounts and is no longer a broker dealer.

The customer accounts are held at custodians of Fidelity – National Financial Services, RBC Financial Services and Equity Advisor Solutions. Upon filing the BDW, the customer accounts are serviced by in-house teams at each custodian.

**ARTICLE I: DEFINITIONS, CONSTRUCTION, AND INTERPRETATION**

The capitalized terms used herein shall have the respective meanings set forth below. A capitalized term used herein that is not defined in this Article shall have the meaning ascribed to that term, if any, in the Bankruptcy Code. The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the construction of the Plan. Whenever the context requires, words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender and vice versa. All exhibits and schedules attached to the Plan are incorporated herein.

*"Administrative Claim"* means any Claim for an Administrative Expense.

*"Administrative Expense"* means any cost or expense of administration of this case incurred on or before the Effective Date that is entitled to priority under Section 507(a)(2) and allowed under Section 503(b) of the Bankruptcy Code, including, without limitation, Fee Claims and all other claims for compensation or reimbursement of expenses to the extent allowed by the

51135412 v1

Bankruptcy Court under the Bankruptcy Code, Cure Claims, and all fees and charges assessed against the Debtor's Estate under Chapter 123 of Title 28, United States Code.

*"Allowed"* means, when used with respect to any Claim, other than a Fee Claim (which is governed by Section 2.1 of the Plan), or any portion thereof, the portion of such Claim (a) that has been allowed by a Final Order, (b) that was listed in the Schedules as neither disputed, contingent nor unliquidated and for which no timely Proof of Claim was filed, (c) for which a Proof of Claim in a liquidated amount has been timely filed pursuant to the Bankruptcy Code or as required by any Final Order of the Bankruptcy Court and as to which either (i) no objection to its allowance has been filed within the period fixed by the Bankruptcy Court, the Plan, or applicable Bankruptcy Rules, (ii) any objection to its allowance has been settled, waived through payment, withdrawn, or denied by a Final Order of the Bankruptcy Court, or (iii) the underlying claim is based upon a judgment that is no longer subject to appeal, or (d) that is expressly allowed in a liquidated amount in the Plan. Unless otherwise specified in the Plan or any Final Order of the Bankruptcy Court, an Allowed Claim or Allowed Administrative Claim shall not include or accrue interest on the amount of such Claim or Administrative Claim maturing, incurred otherwise, or arising subsequent to the Petition Date.

*"Assets"* means all of the Debtor's assets, which will be liquidated and distributed to Holders of Allowed Claims.

*"Avoidance Actions"* means any and all avoidance, recovery, subordination, or other claims, actions, or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under Sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer or conveyance laws.

*"Bankruptcy Case"* means bankruptcy case no. 22-58326-SMS in the Northern District of Georgia under chapter 11 of the Bankruptcy Code.

*"Bankruptcy Code"* means title 11 of the United States Code.

*"Bankruptcy Court"* means the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, or such other court having jurisdiction over this case.

*"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure.

*"Business Day"* means any day other than a Saturday or a Sunday or any other day on which on which the majority of commercial banks located in Atlanta, Georgia are required or authorized to close.

*"Cash"* means legal tender of the United States of America or Cash equivalents, including but not limited to checks, bank deposits, or other similar items.

*"Causes of Action"* means each and every cause of action, claim, defense, counterclaim, cross-claim, setoff, right to payment, of any kind, nature, manner or mode whatsoever, arising under any federal, state or common law, including without limitation Avoidance Actions, all claims, disputes, objections, litigation or appeals with respect to any Claim, and any action, and any rights related thereto, including without limitation any and all rights to defend or prosecute any litigation or appeal in any court or arbitration proceeding, that the Debtor or the Estate may hold against any Person as of the Effective Date.

*"Claim"* shall have the meaning provided in Section 101(5) of the Bankruptcy Code.

*"Claim Objections"* means any objection made in this Bankruptcy Case to a Claim.

"*Class*" means a category of holders of Claims as set forth in the Plan.

*"Collateral"* means any property of the Debtor encumbered by a valid and enforceable Lien to secure the payment of a Claim.

*"Confirmation Date"* means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

*"Confirmation Hearing"* means the hearing held by the Bankruptcy Court pursuant to Section 1128 of the Bankruptcy Code on confirmation of the Plan.

*"Confirmation Order"* means the order of the Bankruptcy Court confirming this Plan in accordance with the provisions of the Bankruptcy Code and which is in form and content acceptable to the Debtor.

*"Contract Rate"* shall mean, with respect to any Claim, the non-default contract rate of interest provided for in the promissory note, loan agreement, or other contract, if any, between the Debtor and the Holder of such Claim.

*"Creditor"* shall have the meaning provided in Section 101(10) of the Bankruptcy Code.

*"Cure Claim"* means a Claim arising from the assumption of an Executory Contract under Section 365(b) of the Bankruptcy Code.

*"Debtor"* means Kalos Capital, Inc., and shall also include, where applicable, the Debtor from and after the Effective Date as reorganized pursuant to this Plan.

*"Disallowed"* means, when used with respect to a Claim, a Claim or the portion thereof which (a) is fully and finally denied allowance in a Final Order of the Bankruptcy Court, or (b) is estimated for purposes of allocation or payment of Distributions at zero ($0.00).

*"Disputed"* when used with respect to a Claim means any such Claim that is not an Allowed Claim and is not a Disallowed Claim, including but not limited to any Claim that is not listed on the Debtor's Schedules or that is listed in the Debtor's Schedules as disputed, contingent,

9

or unliquidated, any Claim that is the subject of an objection filed in the Bankruptcy Court, and any Claim that is disputed by the Debtor in any litigation, lawsuit, appellate proceeding, or adversary proceeding in the Bankruptcy Court or any other court of competent jurisdiction.

*"Distribution"* means the property or money required by this Plan to be distributed to the Holders of Allowed Claims.

*"Effective Date"* means the first Business Day after the date upon which all conditions precedent to the occurrence of the Effective Date set forth in Section 9.7 of the Plan have been met; *provided, however*, if (x) a stay of the Confirmation Order is imposed prior to the Effective Date under applicable law, rule, or order of the Bankruptcy Court or an appellate court, (y) the Confirmation Order has not become a Final Order by virtue of the filing of any motion permitted under Federal Rules of Bankruptcy Procedure 9023 or 9024, or (z) a notice of appeal is filed on or before the deadline for filing an appeal of the Confirmation Order, then the Debtor may defer the Effective Date until a date that is not later than fourteen (14) days following entry of a Final Order denying any motion under Federal Rules of Bankruptcy Procedure 9023 or 9024, or in the event of an appeal, fourteen (14) days after affirmance of the Confirmation Order, by filing a notice of such deferment in the Bankruptcy Case. Nothing in this Plan shall limit the Debtor's right to oppose or waive any stay of the Confirmation Order or request the posting of a bond as condition to any such stay.

*"Estate"* means the Debtor's estate in this case created pursuant to Section 541 of the Bankruptcy Code.

*"Executory Contract"* means any prepetition executory contract or unexpired lease governed by Section 365 of the Bankruptcy Code.

*"Fee Application"* means an application or motion, as appropriate, for the allowance or payment of a Fee Claim.

*"Fee Claim"* means a Claim by a Professional made pursuant to Sections 327, 328, 330, 331, 363, or 503(b) of the Bankruptcy Code or otherwise relating to services performed by a Professional after the Petition Date and prior to and including the Confirmation Date.

*"Final Decree"* means the final decree entered by the Bankruptcy Court pursuant to Bankruptcy Rule 3022.

*"Final Order"* means an order or judgment of the Bankruptcy Court that is (a) an order or judgment as to which the time to file a notice of appeal, a petition for certiorari, or a motion permitted under Federal Rules of Bankruptcy Procedure 9023 or 9024 has expired and as to which no such appeal, certiorari proceedings, or motion shall then be pending, or (b) in the event that a notice of appeal, petition for certiorari, or a motion permitted under Federal Rules of Bankruptcy Procedure 9023 or 9024 is timely filed, such order is no longer subject to any such appeal, certiorari proceedings, or motion.

51135412 v1

*"Holder"* means a Person who is the legal or beneficial owner of a Claim or interest and, when used in conjunction with a Class or type of Claim or Interest, means the legal or beneficial owner of a Claim or interest in such Class or of such type.

*"Impaired Class"* shall mean any Class whose members are Holders of Claims that are impaired within the meaning of Section 1124 of the Bankruptcy Code.

*"Kalos"* means the Debtor, Kalos Capital, Inc.

*"Lien"* has the meaning provided in Bankruptcy Code Section 101(37) and shall include, without limitation, a "statutory lien" as defined in Bankruptcy Code Section 101(53) and a "judicial lien" as defined in Bankruptcy Code Section 101(36).

*"Non-Tax Priority Claim"* means any Claim that, if Allowed, would be entitled to priority in payment under Bankruptcy Code Section 507(a) other than a Priority Tax Claim, an Administrative Claim, or a Fee Claim.

*"Ordinary Course of Business"* shall have the meaning given to such term as utilized in Section 363(b) of the Bankruptcy Code.

*"Person"* means and includes natural persons, corporations, limited partnerships, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other organizations, irrespective of whether they are legal entities, governments and agencies and political subdivisions thereof or other entities.

*"Petition Date"* means October 17, 2022.

*"Plan"* or *"Plan of Liquidation"* means this Plan of Liquidation either in its present form or as it may hereafter be altered, amended, or modified from time to time.

*"Plan Contribution"* shall mean the funds that will be provided to the Debtor by Carol and Daniel Wildermuth in the amount of $300,000.00.

*"Plan Supplement"* means the exhibits, schedules, agreements, and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. All documents comprising the Plan Supplement shall be in form and substance acceptable to the Debtor.

*"Priority Tax Claim"* means any Claim against the Debtor that, if Allowed, would be entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

*"Professional"* means any professional employed in accordance with a Final Order entered in the Bankruptcy Case under Sections 327 or 1103 of the Bankruptcy Code.

*"Pro Rata Share"* means, with respect to an Unsecured Claim, a fractional interest with (i) the amount of the Unsecured Claim as the numerator, and (ii) the total amount of all Claims in

the same Class as the denominator. Claims that are Disallowed at the time a Pro Rata Share is calculated according to the terms of the Plan shall not be included in the calculation of the Pro Rata Share.

"***Rejection Bar Date***" means the day that is 30 days after the Confirmation Date.

"***Rejection Damage Claim***" means a Claim by a party to an Executory Contract with the Debtor that has been rejected by the Debtor pursuant to this Plan or a prior Final Order of the Bankruptcy Court entered in this case.

"***Released Parties***" means Carol Wildermuth, Daniel Wildermuth, the Debtor and any of the Debtor's current or former officers, directors, employees, and any entities affiliated or related to the Debtor or Carol or Daniel Wildermuth, regardless as to whether those relationships are direct or indirect. The definition of Released Parties does not include any agents or independent contractors that provided investment advice to clients of the Debtor.

"***Releasing Parties***" means the Debtor, the Estate, any bankruptcy trustee or other representative of the Debtor, any holder of a Claim or Interest against the Debtor, regardless as to whether that holder of a Claim or Interest against the Debtor has asserted such a Claim or Interest in the Bankruptcy Case or otherwise.

"***Schedules***" means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor in accordance with Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules and statement have been or may be supplemented or amended.

"***Secured Claim***" means a Claim that is secured by a security interest in or a Lien on property of the Estate to the extent of the value, as of the Effective Date or such other date established by the Bankruptcy Court, of such Claim Holder's interest in the Estate's interest in such property as determined by a Final Order of the Bankruptcy Court pursuant to Section 506 of the Bankruptcy Code or as otherwise agreed upon in writing by the Debtor and the Claim Holder. Secured Claims shall include Claims secured by security interests or Liens junior in priority to existing security interests or Liens, whether by operation of law, contract, or otherwise, but solely to the extent of the value as of the Effective Date or such other date established by the Bankruptcy Court, of such Claim Holder's interest in the Estate's interest in such property after giving effect to all security interests or liens senior in priority.

"***Settling Creditors***" means Gary Armentrout, John Hutchins, Susan Hutchins, Sandra Goldschein, Ashley Rosseau, Robert Watson and Ann Watson, Steven MacLean and Deborah MacLean, Janice Stroh, Harriette Isom and Klenell Jensen.

"***Settling Creditors Claim***" means any Claim of the Settling Creditors.

"***Settlement Contribution***" means the $1,000,000.00 that will be provided to the Settling Creditors

*"Subchapter V Trustee"* means the Subchapter V Trustee appointed by the Bankruptcy Court.

*"Unsecured Claim"* means a Claim that is not a Secured Claim, an Administrative Claim, a Priority Tax Claim, a Settling Creditors Claim, or a Non-Tax Priority Claim.

*"US Trustee"* means the United States Trustee for the Northern District of Georgia.

### ARTICLE II: UNCLASSIFIED CLAIMS

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified in the Plan. The treatment of such Claims is set forth in this Article II.

**2.1    Administrative Claims.**

**(a)    Time for Filing Administrative Claims**

The Holder of any Administrative Claim that is incurred, accrued, or in existence prior to the Confirmation Date, other than (i) a Fee Claim, or (ii) a liability incurred in the Ordinary Course of Business, must file with the Bankruptcy Court and serve on all parties required to receive such notice a request for the allowance of such Administrative Claim no later than fourteen (14) days following the date of the Confirmation Hearing of this Plan. Such request must be filed and served as required by applicable Bankruptcy Rules and include at a minimum (i) the name of the Holder of the Claim, (ii) the amount of the Claim, and (iii) the basis of the Claim. Failure to timely and properly file and serve the request required under this Section shall result in the Administrative Claim being forever barred and discharged.

**(b)    Time for Filing Fee Claims**

Any Person who holds or asserts a Fee Claim shall be required to file with the Bankruptcy Court and serve on all parties required to receive such notice a Fee Application no later than fifteen (15) Business Days after the Confirmation Date. Failure to timely and properly file and serve a Fee Application as required under this Section shall result in the Fee Claim being forever barred and discharged.

**(c)    Allowance of Administrative Claims and Fee Claims**

No Administrative Claim, other than a Fee Claim, will be deemed Allowed until an order allowing such Claim becomes a Final Order. Fee Claims arising on or before the Confirmation Date shall be deemed allowed upon the timely filing of a Fee Application, subject to disallowance only upon entry of a Final Order. Objections to Administrative Claims, other than Fee Claims, must be filed and served pursuant to the Bankruptcy Rules on the Holder of such Claim and Debtor no later than thirty (30) days after the filing of the applicable request for allowance or payment of the Claim. Objections to Fee Claims, and any motion or claim for disgorgement or disallowance

of any fees of Professionals previously paid or allowed, must be filed no later than thirty (30) days after the Effective Date. Any Person who fails to timely and properly file and serve an objection, motion, or claim according to the requirements of this Section of the Plan and applicable Bankruptcy Rules shall be forever barred, enjoined, and estopped from asserting any such objection, motion, or claim or otherwise challenging any Administrative Claim or Fee Claim arising on or before the Confirmation Date or otherwise challenging the payment or allowance of any fees of Professionals that were paid or allowed on or before the Confirmation Date.

<strong>(d)    Payment of Allowed Administrative Claims and Fee Claims</strong>

Except to the extent that a Holder of an Allowed Administrative Claim has been paid prior to the Confirmation Date, or agrees to a different treatment, each Holder of an Allowed Administrative Claim (other than Fee Claims, and other than Allowed Administrative Claims incurred in the Ordinary Course of Business, which are paid pursuant to Section 2.1(e) below) shall receive in full satisfaction, release, and discharge of and exchange for such Administrative Claim, and after the application of any retainer or deposit held by such Holder, Cash equal to the Allowed amount of such Administrative Claim on the later of the Effective Date, or upon entry of a Final Order allowing the Administrative Claim. Notwithstanding the timely and proper filing and service of any objection to a Fee Claim against the Debtor, such Fee Claim shall be paid on the Effective Date unless the Debtor, in his sole discretion, defers payment until after settlement, withdrawal, or resolution of such objection through the entry of a Final Order. In the event a Fee Claim is Disallowed pursuant to a Final Order, any payment to the Holder of such Claim may be subject to refund, except as may be provided by order of the Bankruptcy Court; or an appellate court.

Any quarterly fees owed to the US Trustee will be paid on the Effective Date.

<strong>(e)    Administrative Claims Incurred in the Ordinary Course of Business</strong>

Holders of Administrative Claims based on liabilities incurred in the Ordinary Course of Business of the Debtor during the Bankruptcy Case (except for Claims of governmental units for taxes or Claims and/or penalties related to such taxes, alleged Administrative Claims arising in tort, or Rejection Damage Claims) shall not be required to file any request for payment of such Claims; provided, however that any Administrative Claims based on liabilities incurred in the Ordinary Course of Business of the Debtor held by an "insider" (as such term is defined in the Bankruptcy Code) must be approved by the Bankruptcy Court. Each Administrative Claim incurred in the Ordinary Course of Business of the Debtor will be paid or otherwise resolved in accordance with the terms and conditions of the agreement, transaction, or applicable law giving rise to such Administrative Claim, and any Holder of such Administrative Claim need not file an application, motion, or request to protect its rights with respect to the Claim. The Debtor reserves and shall have the right to object before the Effective Date to any Administrative Claim arising, or asserted as arising, in the Ordinary Course of Business, and shall withhold payment of such claim until such time as any objection is resolved pursuant to a settlement or a Final Order.

**2.2    Priority Tax Claims**

14

There is not anticipated to be any Priority Tax Claims against the Debtor but to the extent that there are any Allowed Priority Tax Claims, those Allowed Priority Tax Claims shall be paid in full.

## ARTICLE III: CLASSIFICATION OF CLAIMS

**3.1    Introduction.**

All Claims except Administrative Claims and Priority Tax Claims are placed in the Classes set forth below in this Article III.

The Plan contemplates separate Classes for the Debtor for voting and distribution purposes. To the extent a Class contains one or more subclasses, each such subclass is deemed to be a separate Class for all purposes under the Bankruptcy Code and the Plan.

Except for the unclassified Claims discussed in Article II above, Section 3.2 of the Plan sets forth a designation of Classes of all Claims in accordance with Bankruptcy Code Section 1122(a). A Claim is classified in a particular Class only to the extent any portion of the Claim qualifies within the description of the Class and is classified in a different Class to the extent any portion of the Claim qualifies within the description of that different Class. If a Claim is acquired or transferred, the Claim shall be placed in the Class in which it would have been placed if it were owned by the original Holder of such Claim. A Claim is also placed in a particular Class for the purpose of receiving Distributions only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, satisfied, or released before the Effective Date.

**3.2    Claims Against the Debtor**.

**(a)**    Class 1: Non-Tax Priority Claims

**(b)**    Class 2: General Unsecured Claims

**(c)**    Class 3: Settling Parties Claims

**(d)**    Class 4: Interest of the Debtor

## ARTICLE IV: IDENTIFICATION OF UNIMPAIRED AND IMPAIRED CLAIMS

**4.1    Unimpaired Classes**

There are no unimpaired Classes under the Plan.

**4.2    Impaired Classes**

Classes 1, 2, 3 and 4 are Impaired Classes under the Plan, and the Holders of Claims in those Classes are entitled to vote to accept or reject the Plan.

51135412 v1

**4.3    Controversy Concerning Impairment**

In the event of a controversy as to whether any Class of Claims is an Impaired Class under the Plan, the Bankruptcy Court, after notice and a hearing, will determine such controversy on or before the Confirmation Date. If such controversy is not resolved on or before the Confirmation Date, the Debtor's interpretation of the Plan shall govern.

## ARTICLE V: TREATMENT OF CLAIMS

Treatment of Claims and Interests in each Class is set forth in Article V of this Plan, and treatment of any Claim shall in all events refer exclusively to the Allowed amount of each respective Claim, unless explicitly provided otherwise.

**5.1    Non-Tax Priority Claims – Class 1**

Pursuant to 11 USC 1129(a)(9)(B) each holder of an Allowed Non-Tax Priority Claim will receive—

(i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim;

**5.2    General Unsecured Claims – Class 2**

Class 2 consists of all Allowed Unsecured Claims. Each Holder of an Allowed Unsecured Claim in Class 2 shall receive distributions from the Subchapter V Trustee. The distribution to each Holder of Allowed Unsecured Claim in Class 2 shall equal the Pro Rata Share of the Holder's Allowed Claim multiplied by the proceeds, net of expenses, from the liquidation of the Assets.

The agreement with the Settling Creditors that is reflected by this Plan reduces the amount of General Unsecured Claims from approximately $11,550,000 to approximately $4,783,000.[3] However, the vast majority of those Claims are disputed. The amount of Allowed General Unsecured Claims could decrease if some unliquidated litigation General Unsecured Claims are disallowed. However, the Debtor intends to only object to unliquidated litigation claims in consultation with the Subchapter V Trustee to the extent that filed amounts of General Unsecured Claims appear to be significantly higher than similarly situated General Unsecured Claims. Additionally, that number could increase if additional General Unsecured Claims are filed and ultimately Allowed. Under the Plan, pursuant to the Liquidation Analysis, there is estimated to be approximately $1,175,000 available to pay General Unsecured Claims. This would result in a

---

[3] This is the approximate amount of General Unsecured Claims that are listed in the Schedules and for which there are filed proofs of claim, but this number is net of any General Unsecured proofs of claim that appear to be duplicative, for which the Debtor has no record of having a relationship or appear to be otherwise misfiled.

16

recovery of approximately 24.56% for Allowed General Unsecured Claims. This is only an estimate, however, and multiple factors could change the ultimate amount available for General Unsecured Claims.

### 5.3    Settling Parties Claims – Class 3

Class 3 consists of Claims of the Settling Parties. The Settling Parties shall not receive any distributions from the Debtor or the Debtor's Estate on account of their Claims. The Settling Parties shall receive the Settlement Contribution in accordance with the terms of this Plan. The claims of the Settling Parties are hereby allowed for all purposes and fixed at the amount set out in each proof of claim of each of the Settling Parties.

### 5.4    Interests of Debtor – Class 4

Class 4 consists of any and all interests of the Debtor that are property of the Debtor's Estate under Sections 541 and 1115 of the Bankruptcy Code. Subject to and in accordance with Sections 6.1 and 6.2 of the Plan, and applicable non-bankruptcy law, on the Effective Date, (a) all Assets will be liquidated and distributed to Holders of Allowed Claims If there are any funds or property after Allowed Claims are paid in full, those remaining funds or property shall be distributed to the Debtor.

### ARTICLE VI: MEANS FOR EXECUTION AND IMPLEMENTATION OF THIS PLAN

### 6.1    Means for Execution and Implementation of this Plan

Following the Effective Date, the Debtor shall pay, from the Assets and the Contribution, Holders of Allowed Claims all payments due under the Plan.

Holders of Allowed Claims in Class 1 will receive their treatment as set forth in Section 5.1.

Holders of Allowed Unsecured Claims in Class 2 shall receive their Pro Rata Share of the remaining Assets and the Contribution after payment of any Claims with higher priority and net of the expenses of distribution. In the event that a Claim in Class 2 is Disallowed pursuant to a Final Order, the Holder of such Claim shall immediately forfeit any right to a distribution by the Debtor. As set forth in Section 5.2, if there are any funds or property remaining after distributions are made to all Allowed Claims in Class 2, those remaining funds or property shall be distributed to the Debtor.

Holders of Allowed Settling Creditors Claims shall receive the the Settlement Contribution and they shall be responsible for dividing it amongst themselves.

The Debtor shall be obligated to take affirmative action to manage and distribute the Assets, in a way that maximizes the value of such assets, including without limitation the duty to determine the optimal time and method for operating or selling any assets.

The Holders of Allowed Claims shall receive more value and retain more rights under this Plan, as of the Effective Date, than they would receive in a liquidation under chapter 7 of the Bankruptcy Code. Accordingly, the Plan satisfies the requirements of Section 1129(a)(7) of the Bankruptcy Code. A liquidation analysis is attached hereto as Exhibit A.

### 6.2   Plan Contribution and Settlement Contribution

(A) The Wildermuths will pay the Plan Contribution and the Settlement Contribution totaling $1,300,000 in the following installments:

(a) $250,000 that was placed into escrow with the Subchapter V Trustee, until entry of a Final Order confirming this Plan, in which event the Trustee shall disburse the funds as set forth below. If a Final Order confirming a Conforming Plan is not entered, the Subchapter V Trustee shall disburse the funds back to the Wildermuths.

(b) $150,000 on or before October 1, 2023.

(c) $150,000 on or before January 1, 2024.

(d) $150,000 on or before April 1, 2024.

(e) $250,000 on or before July 1, 2024

(f) $250,000 on or before October 1, 2024.

(g) $100,000 on or before January 1, 2025

(B)   With regard to each payment the Wildermuths make under this Section 6.2, the Wildermuths will make such payment to the Subchapter V Trustee and the Subchapter V Trustee shall pay 76.9231 percent of each such payment to the Settling Parties (with the Subchapter V Trustee paying each member of the Settling Parties of this distribution in percentages set out in a to be filed supplement) within three business days and 23.0769 percent shall be distributed by the Subchapter V Trustee to holder of Allowed Claims pursuant to their priority under this Plan.

Any failure by the Wildermuths to make these payments shall constitute an immediate default under this Plan, with time being of the essence.

(C)   Sale of Residence.

(1)    The Wildermuths will, promptly upon entry of a Final Order confirming this Plan,

retain a reputable real estate broker for the purpose of selling their residence in Ponte Vedra, Florida 1263 Ponte Vedra Blvd (the "Residence").

(2)     The Wildermuths shall list the Residence within 15 days of the entry of a Final Order confirming this Plan at a commercially reasonable market price in consultation with a real estate broker that is mutually acceptable to the Wildermuths, and which price and price changes is/are transmitted to the Subchapter V Trustee within 5 business days of establishment and any subsequent changes, and to fully cooperate with the real estate broker in the showing, negotiations and sale of the Residence.  Upon request, the Wildermuths shall keep the Subchapter V Trustee accurately informed of the listing, showing, negotiations, sale and closing of sale of the Residence which information shall be kept in confidence by the Settling Parties and used only for purposes of determining compliance and enforcement of this agreement; any failure to do so will constitute a default under this Plan.  .  Time is of the essence. The Wildermuths shall follow any recommendations of the retained real estate broker with regard to the sale of the Residence including, but not limited to, with regard to the listing price, price changes and offers made for the purchase of the Residence.  The Wildermuths agree not to object to any of the real estate broker's recommendations or any sale of the Residence on terms recommended by the real estate broker.

(3)     Upon the closing of the sale of the Residence, and after satisfaction of all encumbrances on the Residence, the balance of the Plan Contribution and Settlement Contribution will be held in escrow and then paid to the Subchapter V Trustee from the closing proceeds within 5 business days of receipt of funds from closing.

(D)     Potential tax refund.  Upon receipt of any tax refund, the Wildermuths will pay 75 percent of the amount of such refund to the Subchapter V Trustee, up to the balance of the Plan Contribution and Settlement Contribution that has not been paid.

(E)     Mortgage on Residence.  The Wildermuths will use their reasonable best efforts to obtain the consent of Bank of America for them to place a new or additional mortgage on the Residence to secure payment of the Plan Contribution and Settlement Contribution and, if they receive such consent, will execute such a mortgage in favor of the Subchapter V Trustee.

(F)     Full payment terminates obligations.  If the Wildermuths make the full payment amount set forth in Section 6.2(A), they shall have no further obligations including, but not limited to, selling the Residence or obtaining a second mortgage on the Residence.

(G)     Preservation of Rights of Settling Parties and Other Creditors.  Unless and until the Wildermuths have paid the entire Plan Contribution and Settlement Contribution, the Settling Parties and all other creditors shall retain all of their rights.  Without limiting the generality of the foregoing, neither the execution of the Settlement Agreement nor confirmation of this Plan shall have any effect on the nondischargeability pursuant to section 523(a) of the Bankruptcy Code of any claim against Kalos or the Wildermuths unless and until the Plan Contribution and Settlement Contribution are paid in full.

19

### 6.3    Distributions

If an interim Distribution is made, the Subchapter V Trustee shall withhold a reserve from this distribution to account for potential administrative expenses. Additionally, the Subchapter V Trustee shall withhold from any interim Distribution a disputed claims reserve sufficient to pay the potential Pro Rata Share to any Class 2 Claims that have neither been Allowed or Disallowed. No withholding shall apply to the amounts due the Settling Parties.

### 6.4    Debtor's Handling of Claims and Avoidance Actions.

Unless released by this Plan, the Debtor shall retain the ability to pursue any Claims of the Estate and any Avoidance Actions.

### ARTICLE VII: TREATMENT OF EXECUTORY CONTRACTS

### 7.1    General Treatment of Executory Contracts: Rejected

The Plan constitutes and incorporates a motion under Bankruptcy Code Sections 365 and 1123(b)(2) to (a) reject, as of the Effective Date, all Executory Contracts to which the Debtor is a party, except for any Executory Contract that was terminated before the Effective Date or has been assumed or rejected pursuant to an order of the Bankruptcy Court entered before the Effective Date, and (b) assume all Executory Contracts identified in any schedule of assumed contracts that may be included in the Plan Supplement.

The Confirmation Order shall constitute an order of the Bankruptcy Court under Bankruptcy Code Sections 365 and 1123(b)(2) approving the rejection or assumption, as applicable, of Executory Contracts pursuant to the Plan as of the Effective Date. Notice of the Confirmation Hearing shall constitute notice to any non-debtor party to an Executory Contract that is to be assumed or rejected under the Plan of the proposed assumption or rejection of such Executory Contract and any proposed amount of any Cure Claim.

### 7.2    Cure Payments and Release of Liability

Except as otherwise provided in a Final Order, pursuant to Bankruptcy Code Sections 365(a), (b), (c), and (f), all Cure Claims that may require payment under Bankruptcy Code Section 365(b)(1) under any Executory Contract that is assumed pursuant to the Confirmation Order shall be paid by the Debtor as an Administrative Claim (i) on or before the Effective Date with respect to Cure Claims that are not Disputed or (ii) within thirty (30) Business Days after a Disputed Cure Claim is Allowed, if ever, by agreement of the parties or a Final Order. If a party to an assumed Executory Contract has not filed an appropriate pleading on or before the date of the Confirmation Hearing disputing any proposed Cure Claim, the cure of any other

20

defaults, the promptness of the Cure Claim payments, or the provision of adequate assurance of future performance, then such party shall be deemed to have waived its right to dispute such matters. Any party to an assumed Executory Contract that receives full payment of a Cure Claim shall waive the right to receive any payment on a Class 2 General Unsecured Claim that relates to or arises out of such assumed Executory Contract.

### 7.3    Bar to Rejection Claims

If the rejection of an Executory Contract pursuant to Section 7.1 of the Plan gives rise to a Claim by any non-Debtor party or parties to such Executory Contract, such Claim shall be forever barred and shall not be enforceable against the Debtor, the Estate, or the agents, successors, or assigns of the foregoing, unless a proof of such Claim is filed with the Bankruptcy Court and served upon the Debtor on or before the Rejection Bar Date. Any Holder of a Claim arising out of the rejection of an Executory Contract that fails to file a proof of such Claim on or before the Rejection Bar Date shall be forever barred, estopped, and enjoined from asserting such Claim against the Debtor, the Estate, or any of their assets and properties. Nothing contained herein shall extend the time for filing a proof of Claim for rejection of any Executory Contract rejected before the Confirmation Date.

### 7.4    Rejection  Claims

Any Rejection Damage Claim arising from the rejection of an Executory Contract shall be treated as a Disputed General Unsecured Claim in Class 7 for purposes of Plan treatment, and must file a motion for estimation under Section 10.5(b) of this Plan in order to participate in Class 7 treatment, in addition to satisfying the requirements of Article VII of the Plan. Nothing contained herein shall be deemed an admission by the Debtor that such rejection gives rise to or results in a Rejection Damage Claim or shall be deemed a waiver by the Debtor or any other party in interest of any objections to such Rejection Claim if asserted.

### ARTICLE VIII: ACCEPTANCE OR REJECTION OF THE PLAN

### 8.1    Impaired Classes Entitled to Vote

Only the Holder of an Allowed Claim in an Impaired Class may vote to accept or reject the Plan, and each such Holder must vote separately, except that a Holder of a Disputed Claim that has been estimated and allowed for purposes of voting on the Plan, in accordance with Bankruptcy Code Section 502(c) and Section 10.5(b) of this Plan, may also vote. No other voting is permitted.

### 8.2    Alternative Confirmation Standards Under Section 1191(a) and (b)

Debtor seeks to confirm this Plan by obtaining the consent of all Impaired Classes provided for in this Plan by a majority in number and two-thirds in amount of Allowed Claims actually voting.  If Debtor succeeds in obtaining the consent of all Impaired Classes, the provisions of the Plan referencing and operating under section 1191(a) of the Bankruptcy Code will apply. If Debtor is unable to obtain the consent of all Impaired Classes, Debtor will request the Court to confirm

the Plan under 1191(b). In this case, the provisions of the Plan referencing and operating under section 1191(b) of the Bankruptcy Code will apply.

## ARTICLE IX: EFFECT OF PLAN CONFIRMATION AND EFFECTIVE DATE

### 9.1    Binding Effect

From and after the Effective Date, the Plan shall be binding upon and inure to the benefit of the Debtor, all former, present and future Holders of Claims, and their respective successors and assigns, and all other parties in interest in the Bankruptcy Case. Confirmation of the Plan binds each Holder of a Claim to the terms and conditions of the Plan, whether or not such Holder has accepted the Plan, receives money or property under the Plan, or is otherwise treated under the Plan, or was listed on Debtor's Schedules.

### 9.2    Vesting of Assets

Except as otherwise provided in this Plan and the Confirmation Order, any and all property and assets of the Debtor and the Estate shall vest in accordance with the terms of the Plan free and clear of all Claims, Liens, encumbrances, charges, and other interests.

### 9.3    Causes of Action and Claim Objections

Except as set forth in the Plan or the Confirmation Order, effective as of the Effective Date, without further action by any party, all Causes of Action including, but not limited to, any Avoidance Actions related to transfers identified in the Debtor's Statement of Financial Affairs, except for those released or exculpated by the Plan, and Claim Objections, shall be managed, controlled and overseen by the Debtor. From and after the Effective Date, and except as set forth in the Plan, or the Confirmation Order, the Debtor shall have the exclusive and absolute right and ability to preserve, prosecute, or maintain all Causes of Action and Claim Objections. The Debtor shall have the sole and exclusive right and discretion to determine whether to pursue any Causes of Action or Claim Objections. The Debtor may settle or compromise Causes of Action and Claim Objections subject to approval by the Bankruptcy Court. No claim, right, cause of action, or other asset shall be deemed waived or otherwise forfeited by virtue of the Debtor's failure to identify such property unless otherwise ordered by the Bankruptcy Court.

Except as provided in the Plan and except as released or exculpated by the Plan, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or causes of action under any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, (i) any and all Claims against any Person, to the extent such Person asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtor, and (ii) the turnover of any property of the Debtor's Estate.

Except to the extent Claims are Allowed under the Plan and except as released or exculpated by the Plan, nothing contained in the Plan or the Confirmation Order shall be deemed

to be a waiver or relinquishment of any Claim, cause of action, right of setoff, or other legal or equitable defense which the Debtor had immediately prior to the Petition Date. The Debtor (or his successors or assigns) shall have, retain, reserve, and be entitled to assert all such claims, causes of action, rights of setoff, and other legal or equitable defenses which the Debtor had immediately prior to the Petition Date fully as if the Bankruptcy Case had not been commenced.

9.4     **Discharge of Debtor**

(a)     **Discharge if Plan Confirmed Under Section 1191(a).** In the event the Plan is confirmed under Section 1191(a), the Debtor shall receive a discharge as provided for under Section 1141(d) upon the Confirmation Date. Without limitation of such discharge but in addition thereto, the Distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, and release of all Claims and Causes of Action against Debtor, whether known or unknown, including any and all liabilities of Debtor, Liens on Debtor's assets, obligations of Debtor, rights against Debtor, and Interests in Debtor or its Estate that arose prior to the Effective Date regardless of whether a claimant accepted or rejected the Plan.

(b)     **Discharge if Plan Confirmed Under Section 1191(b).** If the Plan is confirmed under section 1191(b), as soon as practicable after completion by the Debtor of the payment of all payments expressly provided for under this Plan due within five (5) years of the Effective Date, the Court shall grant Debtor a discharge. The Distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, and release of all Claims and Causes of Action against Debtor, whether known or unknown, including any and all liabilities of Debtor, Liens on Debtor's assets, obligations of Debtor, rights against Debtor, and Interests in Debtor or its Estate that arose prior to the Effective Date regardless of whether a claimant accepted or rejected the Plan.

9.5     **Effectuating Documents; Further Transactions; Timing**

Upon and after entry of the Confirmation Order by the Bankruptcy Court, the Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and to take whatever action is necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and achieve consummation and carry out the Plan in accordance with the Plan, and the Bankruptcy Code, without further application to or order of the Bankruptcy Court. All transactions that are required to occur on or before the Effective Date under the terms of the Plan shall be deemed to have occurred simultaneously, unless otherwise provided in the Plan.

9.6     **Post-Confirmation Retention and Payment of Professionals**

After the Confirmation Date, and except as otherwise provided in this Plan, the Debtor (or his successors and assigns) may retain and pay professionals subject to the approval of the Bankruptcy Court–according to the terms and conditions of Sections 330 and 331 of the Bankruptcy Code with a right to object by parties in interest. Persons who served as professionals

23

to the Debtor prior to the Effective Date may also continue to serve the Debtor (or his successors and assigns).

**9.7    Conditions Precedent to the Effective Date.**

The following are conditions precedent to the Effective Date that must be satisfied or waived by the Debtor in accordance with the terms of the Plan:

1.    The Confirmation Order shall have been entered by the Bankruptcy Court in a form acceptable to the Debtor, and shall be in full force and effect and such Confirmation Order shall be a Final Order.

2.    The Contribution shall have been made to the Debtor.

Upon satisfaction or waiver of the foregoing conditions, the Debtor may file a notice in the Bankruptcy Court of the date of such satisfaction or waiver.

**ARTICLE X: OBJECTIONS TO CLAIMS; DISTRIBUTIONS**

**10.1    Objections to Claims**

Any party in interest, including the Debtor, may file objections to Claims (other than Claims that are deemed Allowed under the Plan). Except as provided in Section 2.1 of the Plan with respect to Administrative Claims and Fee Claims, all objections to Claims must be filed and served in accordance with this Section of the Plan within sixty (60) days after the Effective Date, and any objection to a Claim that is not filed and served in accordance herewith on or before the Effective Date shall be forever barred, estopped and enjoined.

An objection to a Claim will be deemed properly served on the Holder thereof if service is effected by any of the following methods: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the extent counsel for a Holder is unknown, by first class mail, postage prepaid, on the signatory on the proof of Claim or other representative identified and designated on the proof of Claim or any attachment thereto for receipt of notices; (c) by first class mail, postage prepaid, on any counsel that has appeared on behalf of the Holder in the Bankruptcy Case; or (d) if no proof of Claim has been filed, by first class mail, postage prepaid, on the Holder of such Claim at the address set forth in the Schedules.

**10.2    Settlement of Objections to Claims**

From and after the Effective Date, the Debtor is authorized to compromise all Claims, Disputed Claims, and Liens and to execute necessary documents, and stipulations of settlement, compromise or release, subject to the approval of the Bankruptcy Court.

**10.3    No Interest on Claims**

51135412 v1

Unless otherwise specifically provided for in the Plan or the Confirmation Order, post-petition interest shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim for the period from the Petition Date to the date a Distribution is made when and if such Disputed Claim becomes an Allowed Claim. To the extent any Holder of an Allowed Claim is entitled to interest accruing on or after the Petition Date pursuant to the terms of this Plan, a Final Order of the Bankruptcy Court or by separate agreement between the Debtor and the Holder, such interest shall accrue and be payable at the applicable Contract Rate.

**10.4    Setoffs by the Debtor; No Waiver**

Except as otherwise set forth in the Plan, the Debtor (or his successors or assigns) may, but shall not be required to, set off against or recoup from any Claim or any payment or Distribution to be made pursuant to the Plan in respect of such Claim, any Claim or Cause of Action of any nature whatsoever that the Debtor may have to the fullest extent permitted under applicable law. Any dispute related to the setoff or recoupment rights of the Debtor shall be determined by the Bankruptcy Court.  Neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such Claims or Causes of Action that the Debtor may have against such Holder or any affiliate of such Holder.

**10.5    Procedures for Treating and Resolving Disputed and Contingent Claims**

**(a)    No Distributions Pending Allowance.** Notwithstanding any other provision of the Plan, only Holders of Allowed Claims, and Holders of Fee Claims deemed Allowed in accordance with Section 2.1 of the Plan, shall receive Distributions under the Plan.

**(b)    Claim Estimation.** Claims may be estimated to the extent permitted under Bankruptcy Code Section 502(c). The Debtor may request estimation of any Claim pursuant to Bankruptcy Code Section 502(c) regardless of whether that Claim was previously objected to or whether the Bankruptcy Court has ruled on any such objection; *provided, however*, that the Bankruptcy Court will determine (i) whether such Claims are subject to estimation pursuant to Bankruptcy Code Section 502(c) and (ii) the timing and procedures for such estimation proceedings, if any. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. If the Bankruptcy Court estimates any Claim in accordance with Bankruptcy Code Section 502(c), the amount so estimated shall constitute either the amount of such Claim, subject to any pending Claim objection, or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism provided for in the Plan or by the Bankruptcy Court.

(c)    **Allowance of Claims Subject to Bankruptcy Code Section 502(d).**
Allowance of Claims will in all respects be subject to the provisions of Bankruptcy Code Section
502(d), except as provided by a Final Order or a settlement among the relevant parties.

**10.6    Distributions Under the Plan**

(a)    **Distributions.** In accordance therewith and the Plan, the Debtor shall,
among other things, liquidate and manage the Assets a in accordance with the terms and conditions
of the Plan. The Subchapter V Trustee will make Distributions to the Holders of Allowed
Administrative Claims and Allowed Fee Claims payable after the Effective Date.

(b)    **Means of Cash Payment.** Except as otherwise provided in the Plan, Cash
payments made pursuant to the Plan shall be in U.S. dollars and may be made, at the option of and
in the sole discretion of the Debtor, by checks drawn on or wire transfers from a domestic bank.

(c)    **Delivery of Distributions.** All Distributions by check shall be deemed
made at the time such is duly deposited in the United States mail postage prepaid. All Distributions
to any Holder of an Allowed Claim shall be made at the address of each such Holder as set forth on
the proof of Claim filed by such Holder (or at the last address of such a Holder known to the
Debtor, or the Subchapter V Trustee, as applicable, if no proof of Claim is filed or if the Debtor
has been notified in writing of a change of address). If any Holder's Distribution is returned as
undeliverable, no further Distributions to such Holder shall be made unless and until the Debtor or
the Subchapter V Trustee is timely notified in writing of such Holder's then current address, at
which time all missed Distributions shall be made to such Holder without interest. Any Holder of
an Allowed Claim whose Distribution is undeliverable must make demand for such Distribution
to the Debtor or the Subchapter V Trustee in writing on or before thirty (30) days after the date
such undeliverable Distribution was initially made, after which the Distribution shall be retained
by the Debtor, for Distribution to other Holders of Claims pursuant to the terms of the Plan, and
any claim by such intended recipient with respect to such undeliverable Distribution shall be
discharged and forever barred. **The Debtor, and the Subchapter V Trustee, and their respective
agents and professionals are under no duty to take any action to either attempt to locate any
Holder of a Claim, or obtain an executed Internal Revenue Service Form W-9 from any
Holder of a Claim.**

(d)    **Fractional Dollars; De Minimis Distributions.** Any other provision of the
Plan notwithstanding, payments of fractions of dollars will not be made. Whenever any payment of
a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will
reflect a rounding of the fraction to the nearest whole dollar (up or down), with half dollars being
rounded down. No payment of less than one hundred dollars ($100.00) shall be made with respect
to any Allowed Claim, and the Debtor shall retain any such payment and shall deposit same into a
pool for redistribution to other Holders of Allowed Claims in the same Class.

(e)    **Unclaimed Property.** Any Distributions that are unclaimed shall be
distributed by the Subchapter V Trustee to other Holders of Claims pursuant to the terms of the
Plan.

26

(f)    **Payments on Business Days**. In the event any payment, Distribution or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or Distribution or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 10.7    Duty to Disgorge Overpayments

To the extent the Holder of any Allowed Claim receives more than what such Holder is permitted to receive under the Plan, such Holder shall immediately return such excess payment(s) to the Debtor, failing which, the Debtor, as applicable, may sue such Holder for the return of the overpayment in the Bankruptcy Court or any other court of competent jurisdiction. Any such excess payment(s) shall be held by the Holder in constructive trust for the benefit of the Holders of Allowed Claims.

## ARTICLE XI: RETENTION OF JURISDICTION

### 11.1    Jurisdiction

Until the Bankruptcy Case is closed, the Bankruptcy Court retains jurisdiction to the fullest extent under applicable law, including under Bankruptcy Code Sections 105(a) and 1142, including that which is necessary to ensure that the purpose and intent of the Plan are carried out and to hear and determine all objections thereto that could have been brought before the entry of the Confirmation Order. The Bankruptcy Court will retain jurisdiction to hear and determine all Claims against the Debtor and to enforce all Causes of Action and any related counterclaims, cross-claims, and/or third-party claims over which the Bankruptcy Court otherwise has jurisdiction.

### 11.2    Examination of Claims

Following the Confirmation Date, the Bankruptcy Court will retain jurisdiction to decide disputes concerning the classification and allowance of any Claim and the reexamination or reconsideration of Claims that have been Allowed, including for the purposes of voting, and the determination of any objections as may be filed to Claims. The failure by any party to object to, or to examine, any Claim for the purposes of voting will not be deemed a waiver of the right of the Debtor or any party in interest to object to, or to re-examine, such Claim in whole or in part.

### 11.3    Determination of Disputes

The Bankruptcy Court will retain jurisdiction after the Confirmation Date to determine (a) all questions and disputes regarding title to the assets of the Debtor; (b) all Causes of Action, controversies, disputes, or conflicts, whether or not subject to any pending action, as of the Confirmation Date, to recover property pursuant to the provisions of the Bankruptcy Code, and (c) all disputes and controversies regarding the operation, implementation, and interpretation of the Plan, the Confirmation Order, and any agreements that are identified or implement the Plan or the Confirmation Order.

51135412 v1

### 11.4    Additional Purposes

Under Bankruptcy Code Sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order, occurrence of the Effective Date, and/or substantial consummation of the Plan, the Bankruptcy Court will retain exclusive jurisdiction over all matters arising out of or related to the Bankruptcy Case and the Plan to the fullest extent permitted by applicable law, including but not limited to jurisdiction to:

**(a)**    hear and determine any modification of the Plan or the Plan Supplement pursuant to Bankruptcy Code Section 1127, to cure any defect or omission or reconcile any inconsistency in the Plan, the Plan Supplement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary or appropriate to carry out the purposes and effects thereof;

**(b)**    hear and determine disputes, issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the terms and conditions of the Plan and the Plan Supplement and the transactions contemplated thereunder, the Confirmation Order, or any other order of the Bankruptcy Court, or to maintain the integrity of the Plan following confirmation;

**(c)**    hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of or related to the Bankruptcy Case or the Plan;

**(d)**    enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered or approved in the Bankruptcy Case;

**(e)**    hear and determine all disputes involving the existence, nature, or scope of the discharge, injunctions, releases, exculpations, and indemnifications granted pursuant to the Plan or the Confirmation Order;

**(f)**    hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan, the Confirmation Order, any transactions, performance or payments provided for or contemplated in the Plan or the Confirmation Order, or any agreement, instrument, or other document governing or relating to any of the foregoing;

**(g)**    construe and apply any findings of fact and/or conclusions of law made in or in connection with the Confirmation Order;

**(h)**    adjudicate matters arising in the Bankruptcy Case, including matters relating to the formulation and consummation of the Plan;

(i)     enter any orders, including injunctions, as are necessary to enforce title, rights, and powers of the Debtor or to impose any limitations, restrictions, terms and conditions on such title, rights, and powers as the Bankruptcy Court may deem necessary;

(j)     hear and determine all questions and disputes regarding title to or recovery of the assets and property of the Debtor;

(k)     enter a Final Decree closing any or all of the Bankruptcy Case;

(l)     correct any defect, cure any omission, or reconcile any inconsistency in the Plan, the Plan Supplement, or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan, the Plan Supplement, and the Confirmation Order including the adjustment of the date(s) of performance under the Plan, the Plan Supplement, and any other documents related thereto if the Effective Date does not occur as provided herein, so that the intended effect of the Plan, the Plan Supplement, and such other documents may be substantially realized thereby;

(m)     enter, implement or enforce such orders as may be appropriate if the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(n)     hear and determine all applications for compensation and reimbursement of expenses of Professionals or any other Person under the Plan or under Bankruptcy Code Sections 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code; provided, however, that from and after the Effective Date, subject to Section 9.5 of the Plan, the payment of fees and expenses of professionals retained by the Debtor shall be made in the Ordinary Course of Business and shall not be subject to approval of the Bankruptcy Court;

(o)     hear and determine issues concerning federal tax reporting and withholding that arise in connection with the confirmation or consummation of the Plan;

(p)     hear and determine issues concerning state, local, and federal taxes in accordance with Bankruptcy Code Sections 346, 505, and 1146;

(q)     hear and determine all matters regarding the assumption or rejection of Executory Contracts, including any disputes concerning Rejection Claims or Cure Claims;

(r)     hear and determine any objection to any Claim (including any Administrative Claim), including the allowance, classification, priority, secured status, compromise, estimation, subordination, or payment thereof;

(s)     allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured, unsecured, or subordinated status of any Claim (including any Administrative Claim) and to re-examine Claims that have been allowed for purposes of voting;

51135412 v1

      **(t)**     hear and determine any Cause of Action and any collection or settlement matters related thereto;

      **(u)**     hear and determine any disputes or litigation regarding the validity, priority, or extent of any Lien and any Claim associated therewith;

      **(v)**     hear and determine any other matter related hereto and not inconsistent with the Plan, the Confirmation Order, the Bankruptcy Code, or Title 28 of the United States Code; and

      **(w)**     hear and determine any objection by a Holder of a Claim to any sale or liquidation of the Assets.

**11.5**    **Failure of the Bankruptcy Court to Exercise Jurisdiction**

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Bankruptcy Case, including the matters set forth in this Article XI, the provisions of this Article XI shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE XII: MISCELLANEOUS PROVISIONS

**12.1**    **General Notices**

Any notice, request, or demand required or permitted to be given in connection with the Plan shall be (a) in writing, (b) served to the parties and addresses set forth below by certified mail, return receipt requested, hand delivery, or overnight delivery, and (c) deemed to have been given or made when actually delivered or received:

    **-to the Debtor:**

        Kalos Capital, Inc.
        11525 Park Woods Circle
        Alpharetta, GA 30005

    With a copy to:

        Marc Solomon
        Kelly Waits
        Burr & Forman LLP
        171 17th Street, NW
        Suite 1100
        Atlanta, GA 30363
        Telephone: (404) 815-3000

### 12.2    Plan Supplement

No later than ten (10) days prior to the deadline for filing objections to Confirmation, or no later than any other deadline specified by the Bankruptcy Court or in the Plan with respect to a specific agreement or document, the Debtor shall file with the Bankruptcy Court the Plan Supplement and such exhibits, schedules, agreements, and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. Upon the filing of the Plan Supplement, (a) the Debtor will serve copies of the Plan Supplement on the Office of the U.S. Trustee and any party having appeared in the Bankruptcy Case and (b) the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours. Holders of Claims may obtain a copy of the Plan Supplement upon written request to the Debtor's counsel. The Plan Supplement is incorporated into, and is a part of, the Plan as if set forth in full herein, and all references to the Plan shall refer to the Plan together with all documents contained in the Plan Supplement.

### 12.3    Exemption From Transfer Taxes

Pursuant to Bankruptcy Code Section 1146(a), the issuance, transfer, or exchange of securities or other property under the Plan; the creation, transfer, filing, or recording of any mortgage, deed of trust, financing statement, or other security interest; or the making, delivery, filing, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp tax, real estate tax, conveyance, filing, or transfer fees, mortgage, recording, or other similar tax or other government assessment. The Confirmation Order shall direct all appropriate governmental officials or agents to forgo the collection of any such tax or assessment and to accept such documents delivered under the Plan without the imposition or payment of any charge, fee, governmental assessment, or tax.

### 12.4    Revocation or Withdrawal of the Plan

The Debtor reserves the right to revoke and/or withdraw the Plan at any time before the Confirmation Date. If the Debtor revokes or withdraws this Plan, or if confirmation or the Effective Date of the Plan does not occur, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor or any other Person.

### 12.5    Amendment and Modification of the Plan

The Debtor reserves the right to amended and modify the Plan in writing at any time before the Confirmation Date, provided that (a) the Plan, as modified, meets the requirements of Bankruptcy Code Sections 1122 and 1123 and (b) the Debtor shall have complied with Bankruptcy Code Section 1125. The Debtor further reserves the right to modify the Plan in writing at any time after the Confirmation Date and before substantial consummation of the Plan, provided that (a) the Plan, as modified, meets the requirements of Bankruptcy Code Sections 1122 and 1123, (b) the Debtor shall have complied with Bankruptcy Code Section 1125, and (c)

31

the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under Bankruptcy Code Section 1129. A Holder of a Claim that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such Holder changes its previous acceptance or rejection.

### 12.6    Computation of Time

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein, the provisions of Bankruptcy Rule 9006(a) shall apply.

### 12.7    Due Authorization

Each and every Holder of an Allowed Claim that receives a Distribution under the Plan warrants that it is authorized to accept, in consideration of such Claim, the Distributions provided for in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under the Plan.

### 12.8    Implementation

The Debtor shall execute such documents, take such other actions, and perform all acts necessary or appropriate to implement the terms and conditions of the Plan without the need for further Bankruptcy Court approval.

### 12.9    Execution of Documents

Upon application by the Debtor, the Bankruptcy Court may issue an order directing any necessary party to execute or deliver, or to join in the execution or delivery of, any instrument  or document, and to perform any act necessary for the consummation or implementation of the Plan.

### 12.10   Bankruptcy Restrictions

From and after the Effective Date with respect to the Debtor, the Debtor shall no longer be subject to the restrictions and controls provided by the Bankruptcy Code (e.g., Sections 363 or 364) except as the Bankruptcy Code, the Confirmation Order, or this Plan may specifically provide otherwise. No monthly operating reports will be filed after the Effective Date; however, the Debtor shall provide the U.S. Trustee such financial reports as may be required by applicable law.

### 12.11   Plan Exculpation.

**NEITHER THE DEBTOR, NOR ANY OF THEIR RESPECTIVE EMPLOYEES, EQUITY HOLDERS, PARTNERS, AFFILIATES, OFFICERS, ADVISORS, PROFESSIONALS, ATTORNEYS OR AGENTS, SHALL HAVE OR INCUR ANY**

51135412 v1

**LIABILITY TO THE DEBTOR OR ANY HOLDER OF A CLAIM FOR ANY ACT OR OMISSION IN CONNECTION WITH, RELATED TO, OR ARISING OUT OF, THE BANKRUPTCY CASE, NEGOTIATIONS REGARDING OR CONCERNING THE PLAN OR ANY PLAN SUPPLEMENT, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN, THE ADMINISTRATION OF THE PLAN, OR THE DISTRIBUTIONS UNDER THE PLAN, EXCEPT FOR WILLFUL MISCONDUCT, ACTUAL FRAUD, OR GROSS NEGLIGENCE. THIS PLAN EXCULPATION SHALL ONLY BE EFFECTIVE UPON FULL PAYMENT OF THE PLAN CONTRIBUTION AND THE SETTLEMENT CONTRIBUTION.**

**12.12   Plan Release**

**ONLY UPON THE FULL PAYMENT OF THE PLAN CONTRIBUTION AND THE SETTLEMENT CONTRIBUTION, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED BY THE RELEASING PARTIES, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTOR, THE REORGANIZED DEBTOR, OR ITS ESTATE), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE BY STATUTE, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS OR OTHERWISE, THAT SUCH HOLDERS OR THEIR ESTATES, AFFILIATES, HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS, ASSIGNS, MANAGERS, ACCOUNTANTS, ATTORNEYS, REPRESENTATIVES, CONSULTANTS, AGENTS, AND ANY OTHER PERSONS CLAIMING UNDER OR THROUGH THEM WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTOR, THE REORGANIZED DEBTOR, OR ITS ESTATE, THE CHAPTER 11 CASE, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS OR INTERACTIONS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE PLAN, THE PLAN DOCUMENTS AND THE DOCUMENTS IN THE PLAN SUPPLEMENT OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS RELATING THERETO, AND THE NEGOTIATION, FORMULATION, PREPARATION OR CONSUMMATION OF ANY DOCUMENTS OR TRANSACTIONS IN CONNECTION WITH ANY OF THE FOREGOING, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCES TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE**

33

CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE ANY OBLIGATIONS ARISING AFTER EFFECTIVE DATE OF ANY PARTY OR ENTITY UNDER THE PLAN.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN THE PLAN (THE "THIRD-PARTY RELEASE"), WHICH INCLUDES, BY REFERENCE, EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND, FURTHERMORE, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS (I) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (II) GIVEN IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (III) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE, (V) IN THE BEST INTERESTS OF THE DEBTOR AND ITS ESTATE, (IV) FAIR, EQUITABLE AND REASONABLE, (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VI) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.

### 12.13   Plan Injunction

THE CONFIRMATION ORDER SHALL ACT AS A PERMANENT INJUNCTION AGAINST ANY PERSON: (A) COMMENCING OR CONTINUING ANY ACTION, (B) EMPLOYING ANY PROCESS, OR (C) ANY ACTING TO COLLECT, OFFSET, OR RECOVER ANY CLAIM EXCEPT AS PROVIDED FOR IN THIS PLAN AGAINST: (1) DEBTOR, (2) AGAINST ANY PROPERTY OF DEBTOR. MOREOVER, THE CONFIRMATION ORDER SHALL ACT AS A PERMANENT INJUNCTION AGAINST ANY RELEASING PARTIES: (A) COMMENCING OR CONTINUING ANY ACTION, (B) EMPLOYING ANY PROCESS, OR (C) ANY ACTING TO COLLECT, OFFSET, OR RECOVER ANY CLAIM RELEASED PURSUANT TO THE THIRD PARTY RELEASE, AGAINST ANY RELEASED PARTY. SUCH INJUNCTION SHALL SURVIVE THE CLOSURE OF THE BANKRUPTCY CASE AND THIS COURT SHALL RETAIN JURISDICTION TO ENFORCE SUCH INJUNCTION.

THE INJUNCTION RELATED TO THE RELEASED PARTIES WILL TERMINATE IF THE PLAN CONTRIBUTION AND THE SETTLEMENT CONTRIBUTION ARE NOT PAID IN FULL BY JANUARY 1, 2025.

### 12.14   Document Retention and Maintenance

Upon the Effective Date, the Debtor will no longer have an obligation to maintain and may cease to maintain any client records, due diligence files, or supervisory records of registered representatives.  These supervisory records include, but are not limited to, communications received or sent; advertising, records of outside business activities, records on personal securities

34

accounts, branch audits and gifts logs. Any appropriate governmental agency, however, may notify the Debtor prior to the Effective Date that it wishes to maintain a copy of those supervisory records of registered representatives and the Debtor shall effectuate a transfer of those records to that governmental agency.

### 12.15   Ratification

The Confirmation Order will ratify all transactions effected by Debtor during the pendency of the Bankruptcy Case that were either approved by the Bankruptcy Court or taken in the Ordinary Course of Business.

### 12.16   Interpretation

Unless otherwise specified, all Section, Article, and exhibit references in the Plan are to the respective Section in, Article of, or Exhibit to the Plan, as the same may be amended, waived, or modified from time to time. The headings of the Articles, paragraphs, and Sections of the Plan and Table of Contents in the Plan are inserted for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan or its interpretation. Nothing herein shall be deemed as a judicial admission by any party. Likewise, any defined terms in the Plan not defined shall have the same meaning as that term has under the Bankruptcy Code.

### 12.17   Severability of Plan Provisions

If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable before the Confirmation Date, the Bankruptcy Court, upon the request of the Debtor, will have the power to alter or interpret the Plan to make such term or provision valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and the term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by the holding, alteration, or interpretation, provided that the Debtor consents. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 12.18   Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of Georgia shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan; provided that federal law will govern the construction and implementation of any agreement executed by the United States in connection with the Plan.

### 12.19   Compliance with Tax Requirements

In connection with this Plan, to the extent applicable, the Subchapter V Trustee in making Distributions in accordance with the terms and conditions of this Plan shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit and all such Distributions shall be subject to such withholding and reporting requirements.  The Subchapter V Trustee may withhold the entire Distribution due to any Holder of an Allowed Claim until such time as such Holder provides to the Subchapter V Trustee, the necessary information to comply with any withholding requirements of any governmental unit.  Any property so withheld will then be paid by the Subchapter V Trustee to the appropriate authority.  If the Holder of an Allowed Claim fails to provide to the Subchapter V Trustee the information necessary to comply with any withholding requirements of any governmental unit within six (6) months after the date of first notification by the Subchapter V Trustee to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's Distribution shall be treated as an undeliverable Distribution in accordance with this Plan. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

**KALOS CAPITAL, INC.**

/s/  Carol J. Wildermuth
Carol J. Wildermuth, CFO

36

51135412 v1

**Exhibit A**
**Liquidation Analysis**

| Notes | | Chapter 7 Liquidation | | Chapter 11 |
|---|---|---|---|---|
| | | Value | | |
| | | Low | High | High |
| 1 | Cash | 633,000 | 633,000 | 633,000 |
| 2 | Contribution | - | - | 300,000 |
| 3 | Deposits with Custodians | 1 | 200,000 | 200,000 |
| 4 | Investments | 481,792 | 481,792 | 481,792 |
| 5 | Note | 1 | 10,000 | 10,000 |
| 6 | Business Residuals | 1 | 1 | 1 |
| 7 | Accounts Receivables | 1 | 1 | 1 |
| 8 | Litigation / Avoidance Actions | 1 | 65,000 | 65,000 |
| | **Gross Liquidation Proceeds Available for Distribution** | 1,114,797 | 1,389,794 | 1,689,794 |
| | | | | |
| | **Administrative Claims** | | | |
| 9 | Chapter 7 Trustee Fees and Expenses / Distribution Fees and Expenses | 49,185 | 66,150 | 5,000 |
| | | | | |
| 10 | Non-Tax Priority Claims | 110,000 | 110,000 | 110,000 |
| 11 | Administrative Claims | 400,000 | 400,000 | 400,000 |
| 12 | Priority Tax Claims | - | - | - |
| | **Proceeds Available to Secured Claims** | 555,612 | 813,644 | 1,174,794 |
| | | | | |
| 13 | Secured Claims | - | - | - |
| | **Proceeds Available to General Unsecured Claims** | 555,612 | 813,644 | 1,174,794 |
| | | | | |
| | | - | - | - |
| | | 555,612 | 813,644 | 1,174,794 |
| | | | | |
| 14 | General Unsecured Claims | 11,550,000 | 11,550,000 | 4,783,000 |
| | **Proceeds Available to Equity Interests** | (10,994,388) | (10,736,356) | (3,608,206) |
| | | | | |
| | Debtor Residual | (10,994,388) | (10,736,356) | (3,608,206) |
| | | | | |
| | | - | - | - |

1    Approximate amount of cash held by the Debtor as of the Plan filing date.

2    Under the proposed chapter 11 plan, the Wildermuths are contributing $300,000 to the Debtor.

3    Approximate amounts being held by custodians of the brokerage accounts of former clients of the Debtor. The custodians may make a claim to some or all of these deposits for their work serving as custodians and related to account transfers.

4    This is the approximate value as of the Petition Date of the GPB investments that the Debtor received in connection with a settlement of certain claims brought against the Debtor related to GPB. This value is based upon the financials released by GPB prior to the Petition Date, which financials were released while under SEC monitoring. This is not an immediately liquid investment. Distributions are made by GPB periodically.

5    The Debtor holds a note from a broker in the amount of $144,754. The collectability of this note is uncertain and likely limited.

6    The Debtor receives residuals from prior business. It is anticipated that these funds collection has likely been completed.

7    Approximate amount of accounts receivable.
8    The anticipated approximate amount of anticipated procceds of Avoidance Actions net of any anticipated approximate costs of recovery,
9    The fees and expenses for a chapter 7 trustee are based upon the formulas set forth in 11 U.S.C. 326(a) as applied to the "Gross Liquidation Proceeds". The debtor will not charge any fees in connection with making distributions to creditors. An amount of $5,000 is added for fees and expenses for the Subchapter V Trustee that may be incurred with making distributions to creditors.

10    Anticipated Non-Tax Priority Claims.

11    The approximate amount of administrative expense claims anticipated in the case above any retainers held by professionals. This number is subject to change based upon events in the case.

12    There are anticipated to be limited Priority Tax Claims in the bankruptcy case.

13    There are no secured claims anticipated in the bankruptcy case

14    This is the approximate amount of General Unsecured Claims that are listed in the Schedules and for which there are filed proofs of claim, but this number is net of any General Unsecured proofs of claim that appear to be duplicative, for which the Debtor has no record of having a relationship or appear to be otherwise misfiled.